PETERSEN SHEEP & CATTLE CO., Plaintiff and Respondent, v. R. L. MOSS, a/k/a ROBERT L. MOSS, and VELMA MOSS, Husband and Wife, Defendants and Appellants.

No. 11767.
Submitted May 14, 1970
Decided June 29, 1970
Rehearing Denied July 14, 1970
471 P.2d 546

Ask & Brower, Thomas M. Ask, Roundup, argued, for appellants.

312

Dobald E. Ronish, Lewistown, argued, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff entered upon findings of fact and conclusions of law by the court without a jury. The amount of the judgment was $5,000 with interest at 6%.

The defendants, appellants here, are husband and wife. They have operated a ranch north of Mosby, Montana for many years. They own over 1,100 acres of deeded land and have leases and grazing rights in a grazing district and private leases.

One Fred Somers, a cattle buyer of Lewistown, Montana had been a livestock buyer and agent for the plaintiff, Petersen Sheep and Cattle Co., which is an Iowa corporation. He had been its commission buyer for years. In the fall of 1967, Somers purchased calves from the defendants on their ranch. He purchased the calves in the name of plaintiff. During the course of the sale, defendants discussed sale of their ranch. Somers was not a real estate agent, but he offered to try to sell the ranch for a commission of 5%. At this point defendants knew Somers was plaintiff's cattle buyer and agent

In December 1967, one Osburnson became interested in buying the ranch and so informed Somers.

Somers was in almost daily telephone contact with one Stanley L. Schoelerman, president of plaintiff corporation. During the course of these telephone conversations, Somers told Schoelerman about defendants' ranch. On December 16, 1967, Schoelerman inquired of Somers about the status of the ranch sale. Somers indicated he thought the ranch was sold to Osburnson and that the deal would be completed in a few days. Schoelerman advised Somers that he and his company were interested in purchasing the ranch. Schoelerman instructed Somers to go to defendants and get some money down on it and "tie it up". Somers, following Schoelerman's instructions, went to the defendants' ranch that same day. Somers, with the help of one Vernon Thompson, wrote an agreement as follows:

"This proposal drawn up on December 16, 1967, between R. L. Moss and Velma Moss and Fred Somers as agent for Petersen Sheep and Cattle Company of Spencer, Iowa.

"The ranch consisting of 1165 acres of deeded land and all existing leases that go with ranch at present time.

"Ranch priced at $135,000, with down-payment of $39,295. Balance to be paid at $6440.00 per year with balance of $44,730 to be paid in three (3) equal payments of $14,895 in 1977, 1978 and 1979. 6% interest on unpaid balance.

"Cattle priced as follows: Approximately 175 cows at $200 per head, 12 weaner calves at $75.00 per head and 8 Bulls at $325.00

"Sellers would want down payment on the ranch before end of 1967, cattle to be paid for after January 1st, 1968 and first land payment after January 1st, 1969.

"Buyer to pay $5000.00 money on December 16, 1967 to hold ranch and cattle until Dec. 26th, weather permitting.

"Fred Somers
"R. L. Moss
"Velma Moss"

Somers paid the $5,000 with a draft on Petersen Cattle Co. (There was some confusion on corporate names but the difference is not germane here.) The last sentence of the agreement is what the lawsuit is about.

That same day, in the evening, Somers called Schoelerman and read the agreement to him. The draft was honored by plaintiff corporation after it received the written agreement.

Schoelerman's testimony at this point is quoted in part:

"Q. Now at the time that you paid this draft of $5,000.00, which you say is on or about December 22nd, you had a copy of that Plaintiff's Exhibit Number one in your possession did you not? A. Yes.

"Q. So you got a copy of Plaintiff's Exhibit Number one immediately? A. Yes.

"Q. And you had it when you paid the draft? A Yes.

"Q. The Plaintiff's Exhibit Number one was satisfactory to you, is that correct at that time? A. Yes.

"Q. Even though it was very shortened? A. Yes.

"Q. Now when did you come—in other words, Mr. Somers was instructed to tie up this property until you could get up and look at it, is that correct? A. Yes.

"Q. And to put the $5,000.00 earnest money on the deal? A. Yes."

On December 16, 1967, Somers informed Schoelerman that he, Somers, was getting a commission from defendants on the sale. At this point Somers was the agent of sellers and the agent of buyer. Both knew it and both proceeded with full knowledge of it.

Schoelerman, president of plaintiff corporation, was not able to travel to Montana to look at the ranch until after Christmas in 1967. Somers requested defendants to have some type of contract prepared for discussion when Schoelerman arrived. This was so they would have some starting point and it would not take so long after that, if plaintiff decided to purchase the ranch. Pursuant to Somers' request, the defendants had the proposed contract for deed prepared. Schoelerman arrived at the Moss ranch on December 28, looked over the entire ranch and the livestock, spending practically the entire day on the ranch. During this period of time the terms of the proposed contract were discussed.

At this meeting the defendants were led to believe that plaintiff would probably exercise its option to purchase the ranch. During the discussion of the terms of the contract for deed there was very little disagreement between Schoelerman and the defendants as to the terms of the contract. The only matter of any importance discussed was the reservation of minerals in the contract, the last three payments, and the price to be placed on the house located on the premises.

Schoelerman, as agent for plaintiff, went to Lewistown and went over the matter with its attorney, Mr. Ronish, and checked

out various things concerning the ranch with the Bureau of Land Management office in Lewistown. Schoelerman further directed Somers to try to purchase additional lands near the Moss ranch, if any could be obtained. Schoelerman never again contacted the defendants while in Montana, and apparently returned to Iowa without seeing them again. No communication was had between plaintiff's agents and the defendants except a letter from Schoelerman to the defendants dated January 30, 1968. This letter was written on plaintiff's stationery and indicated that Schoelerman was sorry he was not able to close the deal on the defendants' ranch, and further that he was impressed with the ranch and thought it would be a beautiful place to live.

The defendants learned through Somers that plaintiff could or would not purchase the ranch and was unable financially to do so. Somers then tried to get other persons interested in purchasing the ranch and taking over the "option", but none of these materialized. There was never any communication, either verbal or written, from the plaintiff or its agents or attorneys that the plaintiff would exercise the option to buy or that the terms of the proposed contract for deed were not acceptable. Nothing was heard from the plaintiff or its agents by the defendants until the defendants received from plaintiff's attorney a notice, dated March 1, 1968, in which notice the "option agreement" was rescinded and the plaintiff demanded a refund of the $5,000.

The trial court made findings of fact which essentially found that the agreement of December 16th was entered into; that it was prepared by defendants and *their* agent, Somers; that the contract for deed was prepared by defendants and was a material variation from the agreement of December 16th. The court concluded as a matter of law that the agreement of December 16th was incomplete and uncertain; that defendants failed to submit a contract satisfactory to plaintiff; and that therefore the plaintiff was entitled to rescind and get its $5,000 payment back.

The issues presented are set forth by appellants in seven parts. However in our view, but one issue is involved. That is whether the trial court erred in finding and concluding that the agreement of December 16th was, in effect, an agreement to buy and sell and that defendants had breached the contract and that plaintiff was entitled to a refund.

To reach the above conclusions the trial court placed emphasis, in effect, upon the role of Somers as the agent of the sellers. As we have related in the fact statement, Somers was a dual agent, but significantly known as such by both parties. At the point where Somers followed Schoelerman's direction to "tie it up" for $5,000 until December 26, he was, in our view, plaintiff's agent and his actions in its behalf were subsequently ratified by plaintiff with full knowledge. He accomplished the purpose of plaintiff, and we hold that the trial court was in error.

Both briefs and the trial court have difficulty in placing an appellation on the December 16th agreement; that is, whether it was an option to purchase which the plaintiff elected not to exercise and therefore forfeit; or, whether it was an agreement to buy and sell which was breached by the defendants as the trial court concluded.

As to the latter, with Somers directing the contract for deed as a "starting point" and with Schoelerman arriving to view the ranch and cattle during the "hold" period, it might be difficult to determine just who did breach the contract thereafter. However, we need not dwell on that.

It is clear from the evidence that Schoelerman, as president of plaintiff, directed Somers to go to the defendants' ranch and "tie up the place" with a written agreement and get some money on it so that defendant could not sell it to any other buyer, mainly Osburnson. Schoelerman also ordered Somers to get sufficient *time* for him to travel to Montana to look at the ranch and livestock before a decision *to buy* was made. In this part of the transaction, clearly Somers was acting on behalf of plaintiff corporation. He got what he went after. In the lay-

man's effort to write a contract the essential elements of an option to buy may not have been set forth in every detail. The statute of frauds is not here involved. The parties knew every detail.

The previously quoted agreement of December 16, 1967, calls itself a "proposal". A reading reveals it to "hold" the ranch and cattle until December 26, "weather permitting". Plaintiff makes a point that the year does not appear, but this, in the light of the other circumstances, is not realistic. Plaintiff was not bound to buy, but defendants were bound to "hold" the ranch and cattle for a definite period of time. We are not constrained to analyze in detail the essential provision of an option to purchase. Admittedly, this is a most inept agreement between the parties. But, the parties agreed in their pleadings and by stipulation the trial court found as a fact that:

"2. That at the time of trial Plaintiff and Defendants stipulated in open court that the memorandum agreement dated Dec. 16, 1967, was a valid and binding agreement upon the parties at the time it was made, and that it was to be embodied in a formal contract for deed to be prepared by Defendants and submitted to Plaintiff for execution.."

Who was it binding on? Obviously defendants. They could not sell their ranch to others. They could not avoid their obligations. The fact that they were not required to, later, does not take from the effect of their being bound. Thus, the parties themselves treated the agreement as an option to purchase. The witnesses referred to the $5,000 payment or consideration as "earnest money". The plaintiff relied on the agreement to go further to check out other acquisition possibilities. But, it had gotten what it bargained for.

Plaintiff attempts to make out a failure of consideration, or perhaps an inequitable consideration. It questions the amount of $5,000, in wintertime in Montana, to hold a ranch in Garfield county. Instead, the amount is only 3% of the fair value the parties were discussing, and this figure does not impress us as

318

being inequitable, unjust or in any manner unfair. The plaintiff corporation got just what it bargained for.

We are aware that we have not cited a statute nor a case as authority. We do not intend to. We treat the matter as the parties themselves did. We find the trial court was in error in concluding that the December 16th proposal was a contract of purchase, and that the defendants wrongfully breached the same.

Accordingly, the judgment is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, HASWELL and DALY, concur.