No. 81-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

WENDY'S OF MONTANA, a Mont. Corp.,

        Plaintiff and Appellant,

   -vs-

WILLIAM T. LARSEN and HELEN J. LARSEN,

        Defendants and Respondents.

_____

Appeal from:  District Court of the Fourth Judicial District,
            In and for the County of Missoula,
            The Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

    For Appellant:

        Hibbs, Sweeney, Colberg, Jensen & Koessler,
        Billings, Montana

    For Respondent:

        Boone, Karlberg & Haddon, Missoula, Montana

_____

               Submitted on Briefs:  July 24, 1981

                       Decided:   FEB 11 1982

Filed: FEB 11 1982

_Thomas J. Kearney_
              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff, Wendy's of Montana, appeals from a summary judgment granted by Missoula District Court, the effect of which was to permit the defendants, William T. and Helen J. Larsen, to keep a $22,750 earnest money payment which Wendy's had paid to the Larsens under a contract to purchase land. The Larsens, in turn, were purchasing the land under a contract for deed from William and Dorothy Riggert and Anita Taylor.

Wendy's contends that summary judgment was improperly granted because the Larsens failed to perform a condition precedent to the contract. This contention is based on a contingency clause which Wendy's agent inserted into the buy-sell agreement. Wendy's also contends that summary judgment was improperly granted because a material fact exists as to whether the Larsens or Wendy's had the duty to obtain the consents of the Riggerts and Taylor.

In July 1979, Wendy's agent, Sam McDonald, an experienced businessman and real estate broker, approached the Larsens concerning the purchase of real property located in Missoula County. The Larsens indicated they were willing to sell, but told McDonald that their interest was subject to a contract for deed between themselves and the Riggerts and Taylor. This contract carried a balance of $120,000 with payments running until November 1986. The contract contained a clause prohibiting the Larsens from selling or assigning their interest in the property without first obtaining the written consent of the Riggerts and Taylor, and provided that such consent could not be unreasonably withheld.

McDonald proceeded with arrangements for a sale knowing that the consent of the Riggerts and Taylor would be required.

Before this consent was obtained, the Larsens and Wendy's signed an earnest money receipt and agreement to sell and purchase real property. Wendy's paid the $22,750 as earnest money. This buy-sell agreement provided for a total purchase price of $342,750. The $200,000 was to be paid to the Larsens on or before October 15 in addition to the earnest money already paid and Wendy's was to assume the $120,000 outstanding on the Riggert-Taylor contract. McDonald inserted a typewritten clause into the buy-sell agreement stating that the agreement was contingent upon Wendy's obtaining a contract for deed from the Riggerts and Taylor in the amount of $120,000, at an annual interest rate of 8 1/2 percent for seven years.

The buy-sell agreement also contained a forfeiture clause which provided that, upon the sellers' tendering merchantable title, and the buyer's inability to pay the balance of the purchase price, the earnest money would be forfeited as liquidated damages and the buy-sell agreement would terminate.

The buy-sell agreement provided for a closing date of October 15, 1979, at which time Wendy's was to pay to the Larsens, in cash or certified check, in the amount of $200,000. Wendy's assumed responsibility for obtaining the consent of the Riggerts and Taylor. Sometime after this agreement was signed, McDonald met with Harry Haines, the attorney for the Riggerts. Haines told McDonald that the Riggerts would consent to the sale provided that the $120,000 would be paid off in one year, rather than the seven years set out in the buy-sell agreement. McDonald was satisfied with the terms proposed by Haines and proceeded to make arrangements to close the deal. Nothing in the record indicates that McDonald contacted Ms. Taylor. McDonald did tell Haines that there would be "no problem" with the Riggerts' proposal.

-3-

McDonald told the Larsens that he would be ready to close on or before October 15, but he was not ready on that date. The Larsens extended the agreement until November 15, without demanding additional consideration. The Larsens granted another extension, until December 15, again without additional consideration. McDonald was still unable to complete the transaction, and the Larsens refused any further extension.

Attorneys for McDonald and the Larsens discussed some alternative terms, but never reached an agreement. Nonetheless, McDonald later tendered a check for $72,750 to the Larsens, apparently in an attempt to comply with one of the alternative terms that had been discussed but never agreed to. The Larsens received the check on January 3, 1980 but returned it to McDonald. After having the check returned to him, McDonald then demanded the return of the entire $22,750 earnest money which had been paid to the Larsens on August 7, 1979. The Larsens refused and Wendy's then filed an action to recover the full amount of the earnest money payment.

The forfeiture clause of the buy-sell agreement is clear. These clauses have been upheld, absent grounds for equitable relief. Brigham v. 1st Nat. Bank of Arizona (Ariz. 1981), 629 P.2d 996; Coble v. Scherer (1979), 3 Kan.2d 572, 598 P.2d 561; Lundstrom v. Hackl (Colo. 1978), 579 P.2d 85. It is true that McDonald inserted a "contingency clause" into the agreement, and that this may have been a necessary prerequisite to closing the transaction, but it was not a condition precedent that requires the return of the earnest money. The Larsens complied with the purpose of the earnest money agreement--the land was tied up and removed from the

-4-

marketplace for five months. Peterson Sheep & Cattle Co. v. Moss (1970), 155 Mont. 311, 471 P.2d 546. In addition to taking their land off the market during the existence of the buy-sell agreement, the Larsens also extended the term within which Wendy's was to perform, and on each occasion the Larsens did not receive additional consideration. Wendy's received the benefit of the earnest money agreement and should not now be relieved of the obligations of the agreement. The Larsens fully performed their part of the agreement by withholding the land from sale for five months, and they are entitled to the earnest money payment as liquidated damages for Wendy's failure to perform.

Assuming, furthermore, that obtaining the consent of the Riggerts and Taylor under the "contingency clause" created a condition precedent, Wendy's has waived its right to rely on a failure of that condition. A condition may, of course, be waived by the party for whose benefit it is made. Hallman v. Safety Stores, Incorporated (5th Cir. 1966), 368 F.2d 400; 3A Corbin Contracts, § 761. McDonald knew that the Riggerts and Taylor would consent to the sale only on terms different from those contained in the buy-sell agreement. But McDonald accepted the different terms and said there would be "no problem" in performing them. Although he did not tell the Larsens that the Riggerts and Taylor had imposed different sale terms in getting their own contract paid off, McDonald tried to arrange financing on the basis of the condition imposed by the Riggerts. Failure of Wendy's to secure adequate financing does not constitute a failure of any condition precedent created by the "contingency clause." Further, by accepting the different terms proposed by the

Riggerts as a condition of consent to the sale, Wendy's waived any right to rely on the terms of the "contingency clause."

Wendy's next contends that whether the Larsens or Wendy's had the duty of securing the consent of the Riggerts and Taylor to the sale, is a material fact in dispute precluding summary judgment. The trial court found that on the basis of depositions (both the depositions of the Larsens and McDonald were before the trial court), Wendy's had "assumed responsibility for securing the consent of the underlying obligees of the property.. . ." This fact is not in dispute. The Larsens testified that McDonald had agreed to obtain the consent of the Riggerts and Taylor, and McDonald also admitted that he had agreed to assume the responsibility of obtaining the consent of the Riggerts and Taylor to the sale. McDonald negotiated with the Riggerts through attorney Haines, and on behalf of Wendy's, McDonald accepted the proposed terms. Clearly no material fact exists on the issue of which party had the duty of obtaining the consent.

The order granting summary judgment to the Larsens is affirmed.

Daniel J. Shea
Justice

We Concur:

Frank I. Haswell
Chief Justice

John Conway Harrison

Gen B. Daly

Fred J. Weber
Justices

-6-