[L. A. No. 29598.    In Bank.    Feb. 13, 1969.]

HOLIDAY INNS OF AMERICA, INC., et al., Plaintiffs and Appellants, v. D. MANLEY KNIGHT et al., Defendants and Respondents.

Greenberg & Glusker, Arthur N. Greenberg and Harvey R. Friedman for Plaintiffs and Appellants.

Gordon X. Richmond for Defendants and Respondents.

TRAYNOR, C. J.—Plaintiffs appeal from a judgment for defendants in an action seeking a declaration that a contract was still effective. The judgment was entered after plaintiffs' motion for a summary judgment was denied and defendants' motion for summary judgment was granted.

The pleadings and affidavits of the parties establish the following undisputed facts.

Plaintiffs are the successors in interest to the optionee under a written option contract between the optionee and the owners of the option property, defendant D. Manley Knight and his mother Mary Knight. Mary Knight is now deceased and D. Manley Knight is the sole owner of the property. Although his wife is also named a defendant herein, she has no interest in the contract or the option property. We will therefore refer to D. Manley Knight as defendant.

The contract, executed on September 30, 1963, granted an option to purchase real property in Orange County for $198,633, the price to be subject, however, to prescribed adjustments for changes in the cost of living. Unless cancelled as provided in the agreement, the option could be exercised by giving written notice thereof no later than April 1, 1968. The contract provided for an initial payment of $10,000 and for four additional payments of $10,000 to be made directly to the optionors on July 1 of each year, commencing in 1964, unless the option was exercised or cancelled before the next such payment became due. These payments were not to be applied to the purchase price. The cancellation provision provided that "it is mutually understood that failure to make payment on or before the prescribed date will automatically cancel this option without further notice." On December 9, 1963, the parties amended the contract by executing escrow instructions that provided that the annual payments were to be deposited in escrow with the Security Title Insurance Company, and that, in "the event you [Security Title] do not receive the $10,000 annual payments [by July 1] and upon receiving notice from Optionors to cancel the option, without

further instructions from Optionee you are to terminate the escrow.''

The initial payment of $10,000 and the annual installments for 1964 and 1965 were paid. After the execution of the contract, plaintiffs expended ''great amounts of money'' to develop a major residential and commercial center on the land adjacent to the option property. These expenditures have caused the option property to increase substantially in value since the contract was executed. Plaintiffs' purpose in entering into the contract was to put themselves in a position to secure the advantage of this increase in value resulting from their development efforts.

In 1966 plaintiffs mailed a check for $10,000 to defendant. It was made out to D. Manley Knight and his wife, Lavinia Knight, and dated June 30, 1966. Defendant received the check on July 2, 1966 and returned it to plaintiffs on July 8, stating that the option contract was cancelled. On July 8 plaintiffs tendered another check directly to defendant, and he again refused it. On July 15 plaintiffs deposited a $10.000 check with Security Title payable to defendant. Security Title tendered the check to defendant, but his attorney returned it to plaintiffs on July 27 and advised them that the agreement was terminated pursuant to the cancellation provision.

Plaintiffs contend that payment of the annual installment was timely on the ground that the check became the property of defendant when mailed; that even if the payment was late, the trial court should have relieved them from forfeiture and declared the option in force under section 3275 of the Civil Code; and that, in any event, the trial court erred in excluding extrinsic evidence offered to prove that the escrow instructions modified the contract to permit payment at any time before defendant notified the title company that the option was cancelled. Since the undisputed facts establish that plaintiffs are entitled to relief from forfeiture pursuant to section 3275, it is unnecessary to consider plaintiffs' other contentions.[1]

Section 3275 provides: ''Whenever, by the terms of an obligation a party thereto incurs a forfeiture, or a loss in the

[1]Plaintiffs' initial declaration in support of their motion for summary judgment was insufficient to support a judgment in their favor. Before entering judgment for defendants, however, the trial court agreed to reconsider its initial ruling on the motions of both plaintiffs and defendants for summary judgment, and additional declarations were filed. The undisputed facts establishing plaintiffs' right to relief from forfeiture appear from the declarations filed by both sides.

nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in the case of a grossly negligent, willful, or fraudulent breach of duty." The tumultuous history of this section has been recorded in a lengthy series of major decisions in the area of property and contract law.[2]

Although most of the cases considering section 3275 have involved land sale contracts, its proscriptions against forfeiture apply in any case in which the party seeking relief from default has brought himself within the terms of the section by pleading and proving facts that justify its application. (*Barkis* v. *Scott, supra,* at pp. 118, 120.) In determining whether a given case falls within section 3275, however, it is necessary to consider the nature of the contract and the specific clause in question. Although the contract in the instant case is an option contract, the question is not whether the exercise of the option was timely, but whether the right to exercise the option in the future was forfeited by a failure to pay the consideration for that right precisely on time. Defendant's reliance on *Cummings* v. *Bullock* (9th Cir. 1966) 367 F.2d 182, and *Wilson* v. *Ward* (1957) 155 Cal.App.2d 390 [317 P.2d 1018], is therefore misplaced. Both those cases dealt with the time within which an option must be exercised and correctly held that such time cannot be extended beyond that provided in the contract. To hold otherwise would give the optionee, not the option he bargained for, but a longer and therefore more extensive option. In the present case, however, plaintiffs are not seeking to extend the period during

[2] *Glock* v. *Howard & Wilson Colony Co.* (1898) 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199]; *Barkis* v. *Scott* (1949) 34 Cal.2d 116 [208 P.2d 367]; *Baffa* v. *Johnson* (1950) 35 Cal.2d 36 [216 P.2d 13]; *Freedman* v. *Rector etc. of St. Matthias Parish* (1951) 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1]; *Ward* v. *Union Bond & Trust Co.* (9th Cir. 1957) 243 F.2d 476; *Caplan* v. *Schroeder* (1961) 56 Cal.2d 515 [15 Cal.Rptr. 145, 364 P.2d 321]; Crane, *Recent Decisions on Damages in Commercial Cases in California* (1960) 12 Hastings L.J. 109, 119-121; Hetland, *Real Property and Real Property Security: The Well-Being of the Law* (1965) 53 Cal.L.Rev. 151; Hetland, *The California Land Contract* (1960) 48 Cal.L.Rev. 729; Macaulay, *Justice Traynor and the Law of Contracts* (1961) 13 Stan.L.Rev. 812, 849-856; Smith, *Contractual Controls of Damages in Commercial Transactions* (1960) 12 Hastings L.J. 122, 134-140; Note, *Is it Possible to Contract for an Exact Performance?* (1949) 37 Cal.L.Rev. 498; Note, *Rights of the Defaulting Vendee* (1949) 37 Cal.L.Rev. 704; Comment, *Defaulting Vendee Relieved from Forfeiture* (1949) 2 Stan.L.Rev. 235; Note, *Installment Land Sale Contract: Termination of the Vendee's Rights After Default* (1956) 3 U.C.L.A. L.Rev. 264; Note, *Application of Civil Code, Section 3275 to Relieve from Forfeiture* (1949) 23 So.Cal.L.Rev. 110.

which the option can be exercised but only to secure relief from the provision making time of the essence in tendering the annual payments. (See *Scarbery* v. *Bill Patch Land & Water Co.* (1960) 184 Cal.App.2d 87, 102, 103 [7 Cal.Rptr. 408].) In a proper case, relief will be granted under section 3275 from such a provision. (*Barkis* v. *Scott, supra,* at p. 122.)

The sole issue in this case is whether the plaintiffs have brought themselves within section 3275; whether there would be a loss in the nature of a forfeiture suffered by plaintiffs if the option contract were terminated. Essentially, the position of defendant is that there is no forfeiture since plaintiffs got precisely what they bargained for, namely, the exclusive right to buy the property for the three years during which they made payments. Cancellation because of the late 1966 payment amounts to nothing more than terminating a contract providing for that exclusive right during 1966. As viewed by defendant, this contract is in effect wholly executory and therefore its termination would not result in a forfeiture to either party. (*Martin* v. *Morgan* (1890) 87 Cal. 203 [25 P. 350, 22 Am.St.Rep. 240].)

To sustain defendant's argument, the contract would have to be viewed as a series of independent contracts, each for a one-year option. Only if this were true, could it be said that plaintiffs received their bargained for equivalent of the $30,000 payments. (*Sheveland* v. *Reed* (1958) 159 Cal.App.2d 820, 822 [324 P.2d 633].) The economic realities of the transaction, however, do not support this analysis. First, the language of the agreement states that the "Optionors hereby grant to Optionee the exclusive right and option for a five year period. . . ." The parties agreed to bind themselves to a period of five years with the price payable in five installments. On the basis of risk allocation, it is clear that each payment of the $10,000 installment was partially for an option to buy the land during that year and partially for a renewal of the option for another year up to a total of five years. With the passage of time, plaintiffs have paid more and more for the right to renew, and it is this right that would be forfeited by requiring payment strictly on time. At the time the forfeiture was declared, plaintiffs had paid a substantial part of the $30,000 for the right to exercise the option during the last two years. Thus, they have not received what they bargained for and they have lost more than the benefit of their bargain. In short, they will suffer a forfeiture of that part of the $30,000

attributable to the right to exercise the option during the last two years.[3]

Plaintiffs have at all times remained willing and able to continue with the performance of the contract and have acted in good faith to accomplish this end. Defendant has not suffered any injury justifying termination of the contract, and none of his reasonable expectations have been defeated.[4] Moreover, he will receive the benefit of his bargain, namely, the full price of the option granted plaintiffs. As we stated in *Barkis,* ''when the default has not been serious and the vendee is willing and able to continue with his performance of the contract, the vendor suffers no damage by allowing the vendee to do so.'' (*Barkis* v. *Scott, supra,* at p. 122.)

The judgment is reversed and the trial court is directed to enter a summary judgment for plaintiffs in accord with the views herein expressed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[3]Plaintiffs also allege forfeiture of ''great amounts of money'' expended for the development of surrounding land. Evidently none of the investment was made in the option property. Since there is nothing to indicate that the development was not highly profitable in its own right or that inclusion of defendant's property was necessary to make the development a success, it would not seem that any part of these expenditures can be considered forfeited by a termination of the contract. (Cf. *Scarbery* v. *Bill Patch Land & Water Co., supra,* where the plaintiff offered evidence justifying the allocation of collateral development expenditures to the amounts forfeited by cancellation.)

[4]Although the initial tender was made to defendant and his wife and not to the Security Title Insurance Company as the escrow instructions specified, it gave defendant notice within one day of the due date that plaintiffs sought to keep the contract in force.