[Civ. No. 13187. Third Dist. Nov. 10, 1972.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
McNAMARA CORPORATION LIMITED et al.,
Defendants and Appellants.

McNAMARA CORPORATION LIMITED et al.,
Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

(Consolidated Cases.)

644

## COUNSEL

Monteleone & McCrory, David P. Yaffe and G. Robert Hale for Defendants and Appellants and Plaintiffs and Appellants.

Harry S. Fenton, Kingsley T. Hoegstedt, Orrin F. Finch and David N. Poast for Plaintiff and Respondent and Defendant and Respondent.

## OPINION

EATON, J.*—Plaintiffs in action No. 191001 appeal the trial court's order granting defendant's motion for summary judgment herein.

On January 25, 1963, a major contract for state highway construction was entered into between the State of California and McNamara-Mannix, a joint venture between two Canadian corporations, McNamara Corporation Ltd. and Mannix Co. Ltd. Both of these corporations were legally qualified to enter into such contract. The contract contained in Standard Specification 8-1.02 the proviso that "The performance of the contract may not be assigned, except upon the written consent of the Director of Public Works. Consent will not be given to any proposed assignment which would relieve the original contractor or his surety of their responsibilities under this contract nor will the Director consent to any assignment of a part of the work under the contract."

The joint venturers concluded that, for reasons of tax advantage, each would assign its interest in the contract to a wholly owned American subsidiary corporation. For such purpose, Mannix Co. Ltd., with the consent of the Director of Public Works, assigned its interest in the contract to Mannix Construction, Inc., a Delaware corporation, which then was substituted as joint venturer under the contract. McNamara Corporation Ltd., on February 5, 1963, set up McNamara Corporation of California, Inc., and on February 7, 1963, delegated to it the management of the project defined in the contract. Thereafter, a formal assignment of all rights and duties under the contract, dated March 12, 1963, was executed from McNamara Corporation Ltd. to McNamara Corporation of California, Inc. This assignment was subject to the approval of Mannix Construction, Inc., which approved it in September 1963.

McNamara Corporation Ltd. did not seek or obtain the consent of the Director of Public Works to the assignment to McNamara Corporation of California. To the contrary, it concealed from the state the fact of such assignment. McNamara Corporation of California was not prequalified to bid upon the type of public works contract here involved and probably could not have prequalified upon a contract of this magnitude; and it was not licensed as a contractor within the State of California until July 17, 1963.

Performance of the contract required a substantial period of time and it was brought to satisfactory completion.

---

*Assigned by the Chairman of the Judicial Council.

The contract also contained in Standard Specification No. 9-1.07 the proviso that:

"If the Contractor within said period of 30 days files claims the Engineer will issue a semifinal estimate in accordance with the proposed final estimate submitted to the Contractor and within 30 days thereafter the State will pay the sum so found to be due. Such semifinal estimate and payment thereon shall be conclusive and binding against both parties to the contract on all questions relating to the amount of work done and the compensation payable therefor, except insofar as affected by the claims filed within the time and in the manner required hereunder and except as otherwise provided in Section 9-1.03C.

"The claims filed by the Contractor shall be in sufficient detail to enable the Engineer to ascertain the basis and amount of said claims. The Engineer will consider and determine the Contractor's claims and it will be the responsibility of the Contractor to furnish within a reasonable time such further information and details as may be required by the Engineer to determine the facts or contentions involved in his claims. Failure to submit such information and details will be sufficient cause for denying the claims.

"Upon final determination of the claims the Engineer shall then make and issue his final estimate in writing and within 30 days thereafter the State will pay the entire sum, if any, found due thereon. Such final estimate shall be conclusive and binding against both parties to the contract on all questions relating to the amount of work done and the compensation payable therefor, except as otherwise provided in Section 9-1.03C."

To recommend to the engineer appropriate action under this proviso, there was established in the State Division of Highways a board of review. During the progress of the construction, claims for adjustment of compensation were filed by the substituted joint venturers. Six of these claims were submitted to the board of review, which recommended on August 4, 1966, that they be denied. The state highway engineer did deny them on August 29, 1966.

The joint venturers' representatives had met with and presented their contentions to the board of review before the latter's determination was made, but no formal hearing was held or evidence taken. The "claims file" of the state was also examined and considered by the board, but was not made available to the contractors.

On February 8, 1968, in Sacramento County action No. 181778, the state sued the original joint venturers, their surety and Mannix' California

subsidiary, Mannix Construction, Inc., for recovery of alleged overpayments under this contract.

On May 6, 1968, in Los Angeles County action No. 931776, McNamara Corporation Ltd. and Mannix Construction, Inc., claiming that completion of the project, as indicated by the state, had cost them sums substantially in excess of their contract obligation, sued the state for damages. These same contentions were then pleaded as counterclaim and affirmative defense by the defendants in Sacramento County action No. 181778. Seven claims of damage were made, of which six were those previously denied by the state engineer. Apparently by that time all rights under the contract had been transferred to the original joint venturers by the California subsidiary, McNamara Corporation of California.

Los Angeles County action No. 931776 was then transferred to Sacramento County, renumbered as action No. 191001, and consolidated for trial with action No. 181778.

On September 2, 1970, the state moved for summary judgment for defendant in action No. 191001, and against the counterclaim in action No. 181778. Such motion was granted by the trial court on October 7, 1970, and, after reconsideration, reaffirmed on November 30, 1970. Costs were allowed against all answering parties in action No. 181778, including Mannix Co. Ltd. and the surety.

Thereafter on March 5, 1971, issues raised by the complaint in action No. 181778 were settled without prejudice to the counterclaim. The causes of action based on the complaint were thereupon dismissed.

In preparation for trial, the joint venturers moved for production by the state of its claims file in the matter, and of certain memoranda by state officials commenting thereon. Such motion was denied by the trial court.

The joint venturers now appeal, contending that:

1. The motion for summary judgment was improperly granted as to issues factually in dispute.

2. Costs were improperly allowed against those defendants in action No. 181778, who were not plaintiffs in transferred action No. 191001.

3. Production of documents was improperly denied.

The state responds, contending that:

1. The unauthorized assignment to the wholly owned California subsidiary of one of the joint venturers precluded recovery by the joint

venturers, because (a) such assignment was both a breach of the contract and illegal; (b) the subsidiary was not a party to the present action; and (c) the subsidiary was unlicensed.

2. The denial of the joint venturers' claims by the State Engineer was final (at least as to the six claims denied).

3. No triable issue was presented as to any of the seven claims made.

4. Costs were properly allowed against losing counterclaimants.

5. The documents not produced were protected by official privilege.

### The Effect of the Assignment

■ McNamara's assignment, made without the consent of the Director of Public Works, was prima facie a breach of contract, the more so because the assignee was not prequalified as a state bidder and did not at the outset have a state contractor's license. If the California subsidiary as assignee was independently asserting any right in this case, or was now to be charged with any duty, its status as the situation developed would require very critical scrutiny.

However, in fact, the contract has been performed, and the substituted joint venturers are now trying to collect certain additional payments allegedly provided for thereby. The state argues that the contract has been rendered unenforceable because of the mere existence of McNamara's assignee, a fact then unknown to the state, and a fact not appearing as a matter of law to have had untoward consequence to the state so far as the final completion of the contract was concerned.

The mere existence of a third party assignee, representing independent interests, would present issues not found in this case. *This* assignee was a wholly owned subsidiary corporation.

The transfer of a contract into or out of a corporation can·be made without change of the beneficial interest in and to such contract, in the situation where all the corporate stock is owned by the owner(s) of the other entity involved.

■ "[I]f an assignment results merely from a change in the legal form of ownership of a business, its validity depends upon whether it affects the interests of the parties protected by the nonassignability of the contract." (*Trubowitch* v. *Riverbank Canning Co.* (1947) 30 Cal.2d 335, 344 [182 P.2d 182].)

■ "Where a transfer results merely from a change in the legal form

of a business and does not affect the interests of the party protected by the nonassignable provisions of the lease, a breach of that provision does not occur. [Citation.] In accord with the foregoing general rule, it has been held that a lessee's transfer of his lease to a corporation formed and wholly owned by him, does not violate a provision thereof against assignment. [Citations.]" (*Sexton* v. *Nelson* (1964) 228 Cal.App.2d 248, 259 [39 Cal.Rptr. 407].)

██ Here, absent consent to the assignment, the parent corporation McNamara remained not only the obligor, but the primary obligor, for its share of the joint venture. The contracting parent corporation had, on the one hand, an unaltered duty to the state to perform the contract; and, on the other hand, complete control over the subsidiary as the means of performing that duty. To hold in such circumstances as a matter of law that a third party interest was created, would be to exalt form above substance. The legal status of the subsidiary, whether as prequalified bidder, as licensed contractor, or as potential party litigant, becomes immaterial if the subsidiary is found to be a mere instrumentality of the parent corporation. Whether it was more than that should be determined as a matter of fact.

### The Finality of the State Engineer's Decision

██ The contract provided for review of the contractor's claims by the state engineer and his "final determination" thereof as "conclusive and binding." (Standard Specification No. 9-1.07.)

The United States Supreme Court has held that even where declared by contract to be conclusive, administrative determination may be " 'impeached on the ground of fraud, or such gross mistake as necessarily implied bad faith.' " (*United States* v. *Moorman* (1950) 338 U.S. 457, 461 [94 L.Ed. 256, 259, 70 S.Ct. 288].)

In California, the finality of administrative determination has been impeached upon the ground of gross error where the contract so provided. However, the concept is not limited to specific contract terms. Like contracts generally, the state's public works contracts carry an implied covenant of fair dealing. The state may not by contract impart finality to administrative decisions characterized by fraud or gross error. (See 3A Corbin on Contracts (1960) § 652, p. 129.)

Gross error has been "equated with fraud, constructive fraud, bad faith or failure to exercise honest judgment, as well as decisions rejecting administrative determination when it was arbitrary." (*Acoustics, Inc.* v. *Trepte*

*Constr. Co.* (1971) 14 Cal.App.3d 887, 908 [92 Cal.Rptr. 723].) "Fraud in this connection has a broader connotation than is ordinarily implied. In addition to its ordinary significance, in construction contracts it includes arbitrary action and gross mistake." (*Macomber* v. *State of California* (1967) 250 Cal.App.2d 391, 397 [58 Cal.Rptr. 393].)

"The substantial evidence rule, moreover, has been highly developed and refined as a standard of . . . judicial review of the findings of administrative agencies. Thus absorbing it as one kind of gross error which permits review of the administrative settlement of public contract disputes is eminently practical." (*Clack* v. *State of California* ex rel. *Dept. Pub. Wks.* (1969) 275 Cal.App.2d 743, 748 [80 Cal.Rptr. 274].)

"The boundaries of the phrase 'gross error' fix the degree of finality accorded the engineer's administrative decision and correlatively establish the scope of judicial review. To require dishonesty or bad faith as indispensable elements stamps the decision with more finality and constricts judicial review more narrowly than the phrase permits. Both Teichert and Macomber include arbitrariness within the connotation of gross error.

"The engineer's decision may entail interpretation of the contract language or specifications; application of a rule of law, or of a contract interpretation, to agreed facts; or a resolution of disputed facts. Whatever his honesty, any of these decisions may be so groundless that no impartial, *reasoning* arbiter would agree with it. An action is arbitrary when it is based on no more than the will or desire of the decision-maker and not supported by a fair or substantial reason. [Citations.] In the context of fact-finding arbitrariness characterizes the decision when it lacks substantial support in the evidence. [Citations.] Fraud or bad faith, as morally reprehensible qualities, are not necessary attributes of arbitrariness, hence are not indispensable ingredients of gross error." (*Id.* at pp. 746-747.)

Whether gross error on the merits of the determination can be shown here depends upon proof of fact, which has not been presented at this stage of the case.

However, one procedural error, in violation of fundamental due process of law, has been committed in the submission of claims to the state engineer. The board of review, upon whose recommendations the engineer acted, had before it the state's claims file; but both then and now the contractor has been denied access to such file, upon a contention of privileged official information.

"(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his duty and

not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered." (Evid. Code, § 1040.)

The statutory language suggests a narrow application of the official information privilege in contentious matters, up to the point where the attorney-client privilege would apply to pending or prospective litigation. In any event, however, when the state has submitted certain data to any officer performing an adjudicatory function, as was the state engineer in this instance, then the state "has consented that the information be disclosed in the proceeding" within the meaning of section 1040. Thereupon and thereafter, such data was required to be made available to the contractor. ■ " 'Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.' " (*Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 172 [65 Cal.Rptr. 297, 436 P.2d 297], quoting *Greene* v. *McElroy* (1959) 360 U.S. 474, 507 [3 L.Ed. 2d 1377, 1396-1397, 79 S.Ct. 1400].)

*The Contestability of the Contractors' Claims on Their Merits*

■ "The purpose of the summary judgment procedure is to provide a method for the prompt disposition of actions where there is, in fact, no triable material issue. [Citations.] The court's duty is limited to the determination of whether or not factual issues are presented by the affidavits and it is no part of the court's duty to make any factual determination. [Citation.] ■■ The procedure authorized by section 437c is, of course, a drastic

one requiring caution in its application and may not be used as a substitute for the traditional methods of determining factual issues [citations] and, as pointed out by plaintiff, the supporting affidavits of the moving party are to be construed strictly and those of the opponent, liberally; for purposes of a motion for summary judgment those facts alleged in the opposition affidavit must be accepted as true. [Citations.]" (*Newport* v. *City of Los Angeles* (1960) 184 Cal.App.2d 229, 234 [7 Cal.Rptr. 497].)

 The state, in seeking to show that the contractors' claims do not present triable issues, has in effect tried the case upon documents submitted. A clerk's transcript of almost 2,000 pages, supported by exhibits in excess of 400 pages, has been accumulated. The issues presented require for determination the review not only of contract provisions but of engineering data. The trial court has not considered this evidence upon its merits. The motion for summary judgment was improvidently granted.

### Other Matters

In view of the present ruling, the issues as to costs become moot. Although other points are urged, they are not determinative.

The judgment is reversed and the cause remanded to the trial court for trial on the merits as to all causes of action and affirmative defenses.

Richardson, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied December 4, 1972, and respondents' petition for a hearing by the Supreme Court was denied January 3, 1973.