No. 12650

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

ROTHER-GALLAGHER, a Partnership composed
of William J. Gallagher and James Rother, Jr.,

Plaintiffs and Appellants,

-vs-

MONTANA POWER COMPANY, a Montana Corporation,

Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Appellants:

Goldman, McChesney and Datsopoulos, Missoula, Montana
James Wheelis and Milton Datsopoulos argued,
Missoula, Montana

For Respondent:

Corette, Smith and Dean, Butte, Montana
Kendrick Smith argued, Butte, Montana

---

Submitted: April 24, 1974

Decided: JUN 5 1974

Filed: JUN 5 1974

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the district court granting summary judgment in a timber sale contract dispute. We affirm the judgment of the district court.

On July 23, 1958, two corporations, Rother's Inc. and Rother Lumber Co., Inc., entered into a timber contract with the Montana Power Company to log off an area in Missoula County. Under the contract the two corporations agreed to construct a main-haul timber road, known as the Rattlesnake Road. The road was to be paid for through an amortization of the timber removed.

The Rother companies began immediate operations in 1958 and by 1964 had logged off some 18 million board feet of timber and through the amortization program for paying for the road had reduced the amount owing them by the Montana Power Company to an alleged amount of $46,000.

At the end of 1964 the stockholders of the two Rother companies decided for tax purposes to dissolve the two corporations. The stockholders at the time being James Rother, Jr., William J. Gallagher and a son of Gallagher who had a minority interest. Immediately thereafter the two major parties in the dissolving corporations alleged that they formed a partnership which assumed all the duties and all the obligations of the two corporations. Rother-Gallagher now alleges that they attempted to operate under the timber sale contract but that respondent refused to either designate timber to be cut or to revoke the contract which would have required paying off the unamortized road.

Respondent argues that this is not a simple forfeiture suit but that appellants in their complaint sued for a breach of contract and for alleged loss in profits of some $200,000; that the original agreements between respondent and the Rother companies called for specific reliance on the corporations; further that

Rother, the operations man of the corporations no longer lives in Montana; and that in the assertion by appellants that protection of the Montana Power was "enhanced" is untrue, for over $108,000 of book value assets of each of the companies referred to in the dissolution amounted in actual value to a sum in excess of over $300,000 and were distributed to the two principal stockholders of the two dissolved corporations. All of these reasons respondent argues puts them in a far less desirable position in dealing with the alleged partnership.

Respondent Power Company replies to the allegations of the complaint noting that over 5 years had passed between the time of the last work done under the contract in 1964, and the filing of this action, and that parties to the original contract, the Rother Lumber Company and Rother, Inc. had dissolved and were no longer in existence. Further as an absolute defense against this action that the contract they made with the Rother companies had a provision, Para. 23, which prevented the assignment of any portion of the contract without the consent of the Montana Power Company. Paragraph 23 reads:

> "(23) Rothers [referring to both of the companies] shall not assign this contract, or any portion thereof, nor shall the logging operations be sub-let without the written consent of the Power company."

It is admitted by appellants that no attempt was ever made to secure a written consent from the Power Company to any assignment nor was there ever any written consent to the alleged assignments ever given. Due to this failure to obtain such a consent the Montana Power Company alleges that appellants have no standing whatever to claim any privity or any rights against it.

Concerning the dissolution there was filed by the two Rother companies statements of voluntary dissolution dated January 21, 1965. These statements stated that each company had ceased

to transact business, had no assets, had no intention of ever again resuming operations and attached a tax clearance certificate as provided by section 15-1115, R.C.M. 1947, repealed effective December 31, 1968.

From the interrogatories of Rother and Gallagher it would appear that they formed a partnership on December 31, 1964, but without any written agreement. Gallagher stated "It was the understanding that the Rother-Gallagher partnership would assume the obligations and debts of the Rothers, Inc., and Rother Lumber Company, as well as receiving their assets." Neither Gallagher nor Rother ever advised the Montana Power Company that the Rother companies were dissolved at the end of 1964 nor was the Power Company ever advised that there was a transfer of assets from the Rother companies to the alleged partnership. The book value of the assets turned over from the two companies amounted to $59,219.37 from Rother Lumber Company and $59,219.37 from Rother, Inc. Gallagher, when questioned about whether there was a partnership or not, stated that when the change was made it was a change in name to avoid double taxation. He said it was "sort of an evolution of a business for they continued to use the same books, the same ledger, the same everything * * *." In discussing how they operated after the dissolution Gallagher said the partnership operated as a joint venture.

In the period between the last cutting on the property, which was the last quarter in the year 1964, and the time the legal action was filed in February of 1970, Gallagher met with officials of the Power Company several times, probably during the year 1967. On one occasion he had Rother with him in an effort to either get more timber off the property or to get the lease cancelled. These efforts were unsuccessful.

The only issue raised is whether the trial court properly

- 4 -

granted summary judgment on the ground that appellants had no standing to bring suit.

Appellants argue that the contract language does not void assignments breaching the nonassignment clause and that the general prohibition against transferring contracts of a personal nature is not applicable here. 4 Corbin on Contracts, section 865; Gresmore on Contracts, Sect. 258 [1965].

Appellants further argue that the transfer of rights in the contract between the Rother companies and the partnership is not in violation of the nonassignment clause relying on the holdings of the California Supreme Court in the cases of Trubowitch v. Riverbank Canning Co., 30 C.2d 335, 344, 182 P.2d 182, 188; People v. McNamara Corporation Limited, 28 C.A.3d 641, 104 Cal. Rptr. 822. In these cases the California Supreme Court held that where there is a transfer of an interest, or an assignment of a contract, the court will look to see how it affects the interests of the parties by the nonassignability clause of the contract and will allow it if it can be made without a change of the beneficial interest in and to the contract. See also: Ruberoid Co. v. Glassman Construction Co., 248 Md. 97; 234 A.2d 875.

However, as argued by the respondent, this is not the law of Montana. We do not follow Trubowitch. Rather it has long been the law of this state established in 1912 by the case of Winslow v. Dundom, 46 Mont. 71, 82, 125 P. 136, that provisions for nonassignment in a contract will be upheld. The key case, Standard Sewing-Machine Co. v. Smith, 51 Mont. 245, 248, 152 P. 38, holds that nonconsent to assignment (where nonassignability is set forth in the contract) destroys or precludes the establishment of privity between an alleged assignee and the other party.

The Court in Winslow said:

"While the rule is uniform that a person may contract with whom he pleases and may refuse to

contract with any particular person, still the rule is equally well settled, as stated in 4 Cyc. 20, as follows: 'As to assignability of private contracts, it may be stated as a general rule that rights arising out of agreements or contracts between private individuals may be assigned, in the absence of any provision or stipulation in the agreement or contract to the contrary.' Certain well-recognized exceptions to that rule arise in case the right is coupled with a liability, or the contract involves the relation of personal confidence, or the contract is for personal services; and the reason for these exceptions is apparent at once."

In _Standard Sewing-Machine Co._ the Court, in speaking to the above exceptions, said:

"In the last analysis all the exceptions to the rule of assignability arise out of the nature of the contract, and among them are these: Contracts wherein rights are coupled with liabilities, contracts for personal services, and contracts involving the relation of personal confidence (4 Cyc. 22; Winslow v. Dundom, 46 Mont. 71, 125 P. 136.) A glance at the contract in question, or the slightest consideration of the stipulations above recited, will, we think, disclose that it is within all these exceptions * * *."

We find no reason to change the long established law in Montana that controls this case. See also 6 C.J.S. Assignments §24; Restatement of Law of Contracts 151; 3 Williston on Contracts, Third Edition, §411.

The judgment of the district court is affirmed.

_____
                                    Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 6 -