No. 86-510

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

ELMER A. ERBAN,

       Plaintiff and Respondent,

  -vs-

JOSEPH F. MONFORTON,

       Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Morrow, Sedivy & Bennett; Lyman H. Bennett, III,
        Bozeman, Montana

    For Respondent:

        J. David Penwell, Bozeman, Montana

---

Submitted on Briefs: March 19, 1987

Decided: August 3, 1987

Filed: AUG 3 - 1987

_Ethel M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Joseph Monforton appeals a decision from Gallatin County District Court finding him liable for unjust enrichment as a result of unreasonably withholding written consent to an assignment of respondent Elmer Erban's interest in a tract of land. The issue on appeal is whether there is substantial credible evidence to sustain the decision of the District Court. We affirm.

In 1979, Erban entered into a contract for deed with Monforton for the purchase of real property located in Gallatin County, Montana. The total purchase price was $162,500. Erban made a downpayment of $8,382.12 when the contract was signed, a payment of $5,000 in early 1980, and in October 1980, a payment of $10,849.13, to bring the total payments to $24,231.25. Erban also made improvements to the property in the amount of $3,889.77. Erban purchased the property for use and occupancy by his daughter and her husband, Ray McReynolds. The couple began occupancy in October 1979 and the arrangement was that the couple would begin making payments in 1981. The couple made the 1981 payment and were divorced in September 1982. McReynolds, the son-in-law, decided to stay on the premises and expressed his intentions to Erban. In August 1982, or one month before the couple's divorce was completed, Erban executed an "assignment and novation" with McReynolds and signed a quitclaim deed conveying the property to McReynolds. The quitclaim deed was delivered to the escrow agent by the attorney representing Erban's daughter in the divorce proceedings. Erban acknowledges that the attorney was acting on his behalf. In July 1983, or nearly one year later, Erban asked for Monforton's written consent to the assignment to McReynolds.

2

The 1979 contract between Erban and Monforton provided:

> 3. <u>Assignment</u>. This Agreement shall not
> be assigned, nor shall the real property
> which is the subject of this Agreement be
> encumbered by the second party without
> receiving written consent from the first
> party, said written consent not to be
> unreasonably withheld by the first party.

Monforton responded through his attorney saying that "consent was not extended by Joe [Monforton]." No explanation was given for Monforton's refusal to consent to the assignment. Monforton alleges in his brief that he refused to consent because McReynolds was late with the 1982 payment under the Erban-Monforton contract and had been recently divorced. Notices of default and acceleration were sent to Erban in late 1983. Erban failed to respond, assuming that the contract with Monforton had been cancelled. In March 1984, Monforton accepted a $152,000 cash payment and a promissory note for $22,341 from McReynolds. This allowed McReynolds to break escrow and record the warranty deed from Monforton to Erban, which, together with the deed from Erban to McReynolds, provided for a clear chain of title from Erban to McReynolds and allowed McReynolds to purchase the property at a price of $174,341. Erban then filed suit against Monforton for unreasonably withholding his consent to the assignment to McReynolds. Erban also filed suit against McReynolds and that suit is still pending. Monforton did not appear on the trial date and his counsel made motions to withdraw as counsel and for a continuance of trial proceedings. Both motions were denied.

The District Court found that Monforton had unreasonably withheld his consent to the assignment and that Erban had been damaged in the amount of $28,120.96, Erban's investment cost. The court also awarded Erban attorney fees

3

and costs totalling $2,045.17. If a contract states that written consent shall not be unreasonably withheld, equity principles will apply. The court stated that reasons of sound business judgment, or where the justification for refusing consent is clearly explained, would suffice. Here the court found a provision in the Erban-Monforton contract that written consent to an assignment could not be unreasonably withheld; it concluded that Monforton breached the contract with Erban by failing to provide sufficient reason for refusing to consent to the assignment and therefore was responsible for Erban's damages of $28,120.96.

The standard of review was stated in Lima School Dist. No. 12 v. Simonsen (Mont. 1984), 683 P.2d 471, 476-477, 41 St.Rep. 944, 950:

> In reviewing findings of fact in a civil action tried without a jury, this Court may not substitute its judgment in place of the trier of facts. Our function is confined to determining whether there is substantial credible evidence to support the court's findings. We view the evidence "in a light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence yet still support the findings." Lacey v. Herndon (Mont. 1983), 668 P.2d 251, 255, 40 St.Rep. 1375, 1380.

Upon consideration of the contentions presented by both parties, we conclude that there is substantial credible evidence to support the decision of the lower court.

Affirmed.

_____
Justice

4

We concur:

_L. A. Turnage_
Chief Justice

_John Conway Harrison_

_____

_John L. Sheehy_

_F. C. McDonough_

_William E. Hunt, Sr._
Justices