No. 03-704

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 396

R.C. HOBBS ENTERPRISES, LLC,

        Plaintiff, Respondent and Cross-Appellant,

   v.

J.G.L. DISTRIBUTING, INC.,

        Defendant and Respondent,

   and

ELDON J. NICHOLSON and DONNA NICHOLSON,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula, Cause No. DV 2001-1029,
                The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

        For Appellants Eldon J. Nicholson and Donna Nicholson:

                P. Mars Scott, Keithi M. Worthington, Law Offices of P. Mars Scott, P.C.,
                Missoula, Montana

        For Respondent and Cross-Appellant R.C. Hobbs Enterprises, Inc.:

                Donald V. Snavely, Snavely Law Firm, Missoula, Montana

        For Respondent J.G.L. Distributing, Inc.:

                Christopher B. Swartley, Attorney at Law, Missoula, Montana

Submitted on Briefs: February 24, 2004
             Decided:   December 30, 2004

Filed:

_____

Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Eldon J. Nicholson and Donna Nicholson (the "Nicholsons") appeal from an Opinion and Order entered August 21, 2003, in the District Court for the Fourth Judicial District, Missoula County, granting summary judgment in favor of J.G.L. Distributing ("J.G.L."), thereby permitting J.G.L. to exercise an option to purchase the subject real property. Hobbs Enterprises, L.L.C. ("Hobbs") cross-appeals from the same Opinion and Order which grants summary judgment to the Nicholsons dismissing Hobbs' claims against the Nicholsons and J.G.L. In this cross-appeal, Hobbs seeks to preserve its right to seek an award of attorney fees and costs on appeal based upon the "prevailing party" clause contained in the Option. We affirm.

¶2     We address the following issues on appeal:

¶3     1. Did the District Court err in concluding an assignment from J.G.L. to Hobbs was void, and therefore, the Nicholsons owed no obligation to Hobbs?

¶4     2. Did the District Court err in concluding J.G.L.'s breach of contract in assigning the Option to Hobbs was not sufficient to warrant a forfeiture of J.G.L.'s rights under such Option?

¶5     3. Did the District Court err in applying § 28-1-104, MCA, the antiforfeiture statute, to the failure by J.G.L. to make timely payments?

¶6     4. Are the Nicholsons entitled to their attorney fees?

¶7     5. Are Hobbs and J.G.L. entitled to attorney fees on appeal?

2

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶8      On February 13, 1998, the Nicholsons and J.G.L executed an Option (the "Option") that gave J.G.L five years to purchase property located on Old Grant Creek Road in Missoula from the Nicholsons.  Under the Option J.G.L. was to have possession of the property and to make nonrefundable payments of $1,629 by the 13th of each month to the Nicholsons. Failure of J.G.L. to make a monthly payment would cause the Option to expire immediately and the Nicholsons would not be required to refund any part of the payments already made. The Option stated the monthly payments were not to be credited against the purchase price. The Option did not grant J.G.L. any legal or equitable interest in the property.

¶9      The Option also contained a clause which required J.G.L. to obtain the Nicholsons' express written consent before assigning it to a third party.

¶10     To exercise the Option J.G.L. was required to notify the Nicholsons of its intent to purchase the property and to tender payment of $230,000, the agreed upon purchase price.

¶11     J.G.L. missed two payments, February and March 1998, immediately following execution of the Option.  The Nicholsons accepted the late payments.  All other payments were made on time until April 2001.

¶12     Around the same time the Option was executed, J.G.L. informed the Nicholsons that it wanted to subdivide the property into three separate tracts, keep one, and sell the other two.  J.G.L. asked Eldon Nicholson to utilize his family-split exemption to the subdivision requirements in order to avoid the formal subdivision process.  Nicholson cooperated and assisted J.G.L. in the subdivision process.  The property was divided into three smaller parcels designated Tracts 1, 2, and 3.  The Nicholsons executed three warranty deeds to

3

effectuate the subdivision and placed them with the escrow agent, Insured Titles. J.G.L. paid all costs associated with subdividing the property, including debris removal and grading of the lots, for a total of $17,000.

¶13 In May 1999, after the subdivision process was completed, J.G.L. assigned its option rights to Tracts 1 and 2 to Hobbs for $50,000. J.G.L. retained its rights to Tract 3. Under the assignment, Hobbs agreed to make all further monthly payments and to pay the $230,000 purchase price to the Nicholsons at such time the Option was exercised. Thereafter, Hobbs commenced making the monthly payments of $1,629 to the Nicholsons through the escrow account at Insured Titles.

¶14 Hobbs continued to make the monthly payments through Insured Titles until April 13, 2001, when Hobbs inadvertently missed a payment. In May 2001, the Nicholsons realized they had not received the April payment. The Nicholsons contacted Insured Titles and confirmed the April payment had not been received. Upon learning of the oversight, Hobbs immediately tendered payment on May 8, 2001. Eldon Nicholson sent a letter to J.G.L. on May 11, 2001, informing it that due to the missed payment, the Option had expired; the missed payment caused J.G.L. to forfeit its rights under the Option; any monies paid as consideration for the Option were forfeited; and the Nicholsons had taken full control of the said property. On May 17, Hobbs responded to the Nicholsons' notice of forfeiture on behalf of both J.G.L. and Hobbs , offering to pay the full purchase price, $230,000, in exchange for clear title to the property.

¶15 On May 31, 2001, the Nicholsons rejected Hobbs' offer stating only J.G.L. could exercise the Option. In spite of Hobbs' offer, the Nicholsons claim they did not receive any

4

offer to pay the $230,000 purchase price from J.G.L. until November 19, 2002, 18 months after J.G.L. received the notification of forfeiture. Regardless, Hobbs continued to make the monthly payments into the escrow account through January 2003, the end of the Option period. The escrow agent held the money in trust, since the Nicholsons refused to accept any further payments.

¶16    In September 2002, a third party (the "Johnson Brothers") offered to purchase Tracts 1 and 2 from the Nicholsons for $365,904. The Nicholsons advised J.G.L. in writing on November 1, 2002, that they intended to sell the property to the Johnson Brothers. J.G.L. responded with a letter reiterating it stood "ready, willing and able" to tender the full purchase price of $230,000.

¶17    Meanwhile, in December 2001, Hobbs filed suit against the Nicholsons and J.G.L. Hobbs alleged it had invested $53,972 in the property, and paid the monthly payments from May 1999 to January 2003, for a total investment of $127,277. J.G.L. filed a counterclaim against Hobbs and cross-claims against the Nicholsons. The Nicholsons then filed a counterclaim against J.G.L.

¶18    All three parties filed cross-motions for summary judgment in February 2003. The issues were fully briefed, and oral argument was waived. The District Court issued its Opinion and Order on August 21, 2003. The District Court dismissed Hobbs' claims concluding that Hobbs lacked standing to seek relief from forfeiture against the Nicholsons because it was not a party to the contract between J.G.L. and the Nicholsons.

¶19    With regards to J.G.L.'s cross-claims, the District Court found the consent to assignment clause contained in the Option was valid and enforceable. However, the District

5

Court also held that even though J.G.L. breached the no assignment provision by not obtaining written consent from the Nicholsons to assign its rights under the Option to Hobbs, such did not serve to terminate J.G.L.'s right to exercise the Option because it was not a material breach of contract. The District Court further found J.G.L. violated the Option by not making the April 13, 2001, payment–and, therefore, the Nicholsons were within their rights to refuse the late payment. However, the District Court went on to find forfeiture would be too harsh a remedy given that J.G.L. otherwise made its payments on time and expended a significant amount of money to improve the property. The District Court found J.G.L.'s breach was not grossly negligent, willful or fraudulent. Therefore, the District Court excused the forfeiture and granted J.G.L. 20 days to pay the full purchase price to the Nicholsons. The District Court denied all requests for attorney fees or other damages. This appeal followed.

## II. STANDARD OF REVIEW

¶20    Our review of a summary judgment order is *de novo*. *Urquhart v. Teller*, 1998 MT 119, ¶ 14, 288 Mont. 497, ¶ 14, 958 P.2d 714, ¶ 14. We review summary judgment to determine if the District Court was correct that there are no material facts at issue and if it applied the law correctly. *May v. Era Landmark Real Estate*, 2000 MT 299, ¶ 17, 302 Mont. 326, ¶ 17, 15 P.3d 1179, ¶ 17.

## III. DISCUSSION

### ISSUE ONE

¶21    **Did the District Court err in concluding an assignment from J.G.L. to Hobbs was void, and therefore, the Nicholsons owed no obligation to Hobbs?**

6

¶22 Rule 56(c), M.R.Civ.P., authorizes summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the moving party, the Nicholsons had to demonstrate that no genuine issues of material fact exist. *Stanley v. Holms*, 1999 MT 41, ¶ 31, 293 Mont. 343, ¶ 31, 975 P.2d 1242, ¶ 31. If the movant demonstrates that no genuine issues of material fact exist, "the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist." *Stanley*, ¶ 31. Mere conclusory statements are insufficient to create genuine issues of material fact. *Stanley,* ¶ 32. Further, the fact that all three parties moved for summary judgment does not establish, in and of itself, the absence of genuine issues of material fact. *Montana Metal Bldgs., Inc. v. Shapiro*, 283 Mont. 471, 477, 942 P.2d 694, 698. "Moreover, disagreement over the interpretation of facts does not amount to a genuine issue of material fact." *Stanley,* ¶ 32.

> The determination of the existence of genuine issues of material fact is one that is not always easily ascertained. Important in this determination is whether the material facts are actually disputed by the parties or whether the parties simply interpret the facts differently.

*Sprunk v. First Bank System* (1992), 252 Mont. 463, 466, 830 P.2d 103, 105.

¶23 In the present case, we conclude the Nicholsons demonstrated there was no factual issue as to whether they waived their rights under the consent to assignment clause, and Hobbs failed to set forth specific facts to prove a genuine issue did exist.

¶24 Hobbs claims the Nicholsons waived the consent to assignment clause in the Option. It is well settled law that a "[w]aiver is a voluntary and intentional relinquishment of a known right, claim or privilege, which may be proved by express declarations or by a course

7

of acts and conduct which induces the belief that the intent and purpose was waiver." *VanDyke Const. Co. v. Stillwater Mining Co.*, 2003 MT 279, ¶ 15 , 317 Mont. 519, ¶ 15, 78 P.3d 844, ¶ 15. "To establish a knowing waiver, the party asserting waiver must demonstrate the other party's knowledge of the existing right, acts inconsistent with that right, and resulting prejudice to the party asserting waiver." *VanDyke*, ¶ 15.

¶25 The Nicholsons denied receiving any notice that J.G.L. had assigned its rights to Hobbs. J. Gary Louquet, the President of J.G.L., admitted he at no time informed the Nicholsons of the assignment. There is nothing in the record to show anyone connected with Hobbs told the Nicholsons about the assignment. We conclude these facts are sufficient to shift the burden to Hobbs to show proof that a genuine issue of material fact existed with respect to whether the Nicholsons waived the consent to assignment clause.

¶26 Even after drawing all reasonable inferences in favor of Hobbs as the party opposing the motion for summary judgment, Hobbs failed to show that a genuine issue of material fact existed. Hobbs asserts the Nicholsons had an affirmative duty to inquire as to who Hobbs was when Eldon Nicholson saw Hobbs' name on the payment checks. The checks from Insured Titles were apparently from Hobbs' account. Nevertheless, this does not put the Nicholsons on notice of an assignment; it merely shows that for some reason money is coming from an account by checks that have Hobbs' name on them. However, under the terms of the Option, the Nicholsons had no affirmative duty to inquire if the Option had been assigned. It was J.G.L. who had the duty to seek permission to assign its rights to Hobbs.

¶27 Hobbs next argues the fact the Nicholsons agreed to subdivide the property knowing J.G.L. intended to sell was further proof they had knowledge of the assignment. However,

8

this does not show that J.G.L. had assigned the Option to anyone.

¶28 We hold the District Court did not err in concluding these facts are insufficient to raise a genuine issue of material fact whether the Nicholsons had knowledge of the assignment between J.G.L. and Hobbs. The District Court was correct to conclude the Nicholsons had not waived the consent to assignment clause.

## ISSUE TWO

¶29 **Did the District Court err in concluding J.G.L.'s breach of contract in assigning the Option to Hobbs was not sufficient to warrant a forfeiture of J.G.L.'s rights under such Option?**

¶30 The Nicholsons appeal the District Court's conclusion that even though J.G.L. breached that portion of the Option requiring written consent to assignment of J.G.L.'s rights under the contract, the breach did not terminate J.G.L.'s rights under the Option.

¶31 The Nicholsons assert it is important for the general public to know that if a contract states it is not assignable, then it is not assignable. The Nicholsons further assert, in breaching the consent to assignment clause, J.G.L. defeated every purpose the Nicholsons had in entering the contract. We disagree.

¶32 First, it is well settled law in Montana that contract clauses requiring consent prior to assignment are enforceable, and that any assignment in violation of such clause is void. *See, e.g., Hedges v. Woodhouse*, 2000 MT 220, ¶ 13, 301 Mont. 180, ¶ 13, 8 P.3d 109, ¶ 13; *Rother-Gallagher v. Montana Power Co.* (1974), 164 Mont. 360, 364, 522 P.2d 1226, 1228. It is also well settled that where the contract contains such a clause, assignment without consent destroys or precludes the establishment of privity between an alleged assignee and

9

the other party. *Rother-Gallagher*, 164 Mont. at 364, 522 P.2d at 1228. However, as J.G.L. and Hobbs point out, this does not answer the question of what affect the voided assignment has on the rights of J.G.L.

¶33    In determining remedies for breach of contract, Montana distinguishes between "material" breaches, which entitle the non-breaching party to terminate the contract, and "incidental" breaches, which only entitle the non-breaching party to sue for damages. *Norwood v. Service Distributing Inc.*, 2000 MT 4, ¶ 29, 297 Mont. 473, ¶ 29, 994 P.2d 25, ¶ 29. A material breach is one that touches the fundamental purpose of the contract and defeats the object of the parties in making the contract. *Norwood*, ¶ 29. The party claiming a material breach must show the deficient performance on the part of the other party is, in fact, material to the contract. *Norwood*, ¶ 33.

¶34    The District Court concluded, "violation of [the consent to assignment clause] was not of such consequence to be considered a material breach of contract." The facts, that is, what happened here, are not at issue. Based on our review of the record, we hold the District Court's conclusion was correct when the law is applied to the facts presented. We fail to see how every purpose the Nicholsons had in entering the Option was defeated by the assignment. By their own admission, the Nicholsons were not aware of the assignment until after they sent notice of forfeiture to J.G.L. for missing the April 2001 payment, and they suffered no damage as a result of the assignment.

¶35    The assignment only became material to the Nicholsons once they realized they could sell two lots in the newly subdivided property for an additional profit of $135,000 and retain the remaining lot for themselves. To hold the assignment in question would be a material

10

breach of the contract extinguishing J.G.L's right to exercise its option to purchase would cause the Nicholsons to be unjustly enriched.  *See Erban v. Monforton* (1987), 227 Mont. 531, 740 P.2d 677.

## ISSUE THREE

¶36    **Did the District Court err in applying § 28-1-104, MCA, the antiforfeiture statute, to the failure by J.G.L. to make timely payments?**

¶37    The Nicholsons argue the District Court erred when it granted J.G.L. equitable relief under § 28-1-104, MCA, Montana's antiforfeiture statute which states:

> Whenever by the terms of an obligation a party thereto incurs a forfeiture or a loss in the nature of a forfeiture by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty.

¶38    The Nicholsons first assert the statute is not applicable because the Option in question merely grants a privilege or right to elect to buy, but it does not impose any obligation to buy.  They are correct in that J.G.L. had no obligation to purchase the property.  *See, e.g., Ryan v. Bloom* (1947), 120 Mont. 443, 452, 186 P.2d 879, 883; *Pollard v. City of Bozeman* (1987), 228 Mont. 176, 180, 741 P.2d 776, 779.  However, to exercise its valuable right to purchase, J.G.L. had the corresponding obligation to pay the purchase price.  It is the very purpose of the antiforfeiture statute to provide a basis for equitable relief where forfeiture of a valuable right would otherwise result from default or material breach under a contract. *See, e.g., Quigley v. Acker,* 1998 MT 72, ¶ 31, 288 Mont. 190, ¶ 31, 955 P.2d 1377, ¶ 31. In  interpreting this statute, this Court has said:

> Section 28-1-104, MCA[,] was enacted for the benefit of obligors whose

11

> failure to punctually perform would result in loss to them in the matters in respect to which they have contracted . . . . The intention of the law under this statute is that a forfeiture should not be needlessly enforced.

*Quigley, ¶* 31.

¶39    The circumstances presented here are not unlike those in *Holiday Inns of America, Inc. v. Knight* (Cal. 1969), 450 P.2d 42.  In *Knight*, the option required the optionee to make 5 non-refundable annual payments, and further provided failure to make timely payments would result in automatic forfeiture of the option.  The optionee made improvements to the property.  Then, in the third year of the option, the optionee made the annual payment late. The optionor refused to accept the late payment, and invoked the strict forfeiture provision of the option.  The California Supreme Court held California's antiforfeiture statute was applicable to an option contract containing very similar terms to the Option at issue in this case.[1]  Here, as in *Knight*, J.G.L. also made substantial improvements to the property by subdividing it at their own expense.  The equitable relief provided by § 28-1-104, MCA, is available to J.G.L.

¶40    The Nicholsons cite several cases in which this Court refused to grant equitable relief to the defaulting party under the antiforfeiture statute.  *See Huffine v. Lincoln* (1930), 87 Mont. 267, 287 P. 629;  *Lynch v. Shields* (1974), 165 Mont. 396, 529 P.2d 348; *Petersen Sheep & Cattle Co. v. Moss* (1970), 155 Mont. 311, 471 P.2d 546.  Relying on these cases, the Nicholsons argue J.G.L. cannot invoke the protections of § 28-1-104, MCA, because J.G.L. had not incurred any obligation when it entered into the Option and had not suffered

_____

[1]  California's statute was the source of Montana's antiforfeiture statute and contains the identical language.

12

any true forfeiture upon default.

¶41 The cases relied on by the Nicholsons are unlike the present circumstances. Here, the record shows that at all times since the April 2001 payment was missed, J.G.L. remained ready, willing and able to pay the full price for the property and acted in good faith to accomplish this end. When J.G.L., through Hobbs, offered payment of the full purchase price within 6 days of notification of forfeiture, the Nicholsons had the ability to have all that they were entitled to in their pockets in a reasonable period of time. This Court has long held where the defaulting party tendered full compensation for the accelerated balance within a reasonable period of time, and the defaulting party made significant improvements and paid a significant amount of the money before default, so a forfeiture would result in the seller's unjust enrichment, equitable relief from forfeiture is appropriate. *Quigley*, ¶¶ 37-38*; Roberts v. Morin* (1982), 198 Mont. 233, 241, 645 P.2d 423, 428.

¶42 The Nicholsons further assert that requiring them to complete the sale of the property to J.G.L. constitutes specific performance, which is a remedy only available under an option contract where the party has fully and fairly performed the terms of the contract. *Rogers v. Relyea* (1979), 184 Mont. 1, 7, 601 P.2d 37, 40. They argue the plain language of § 28-1-104, MCA, dictates the breaching party is not entitled to relief where the breach is due to the party's own gross negligence, willfulness or fraud or where the breaching party has not offered full compensation within a reasonable period of time.

¶43 The Nicholsons' substantive argument is that J.G.L. acted willfully when it breached the consent to assignment clause. The record does not demonstrate that J.G.L. acted with gross negligence, willfulness, or fraud. It was only when the Nicholsons discovered they

13

could sell the property at a much greater profit that they acted to strictly enforce the timely payment provision of the contract.

¶44 We conclude, as did the District Court, it is appropriate under these facts to apply the antiforfeiture statute to avoid an unjust result.

### ISSUE FOUR

¶45 **Are the Nicholsons entitled to their attorney fees?**

¶46 The Nicholsons assert they are entitled to attorney fees under the "prevailing party" clause contained in the Option. We conclude the Nicholsons are not entitled to such fees as they did not prevail in the District Court, nor do they prevail on appeal.

### ISSUE FIVE

¶47 **Are Hobbs and J.G.L. entitled to attorney fees on appeal?**

¶48 Both Hobbs and J.G.L assert they are entitled to attorney fees on appeal under the "prevailing party" clause contained in the Option if they prevail in this Court. The contract clause provided:

> Any action brought by the Buyer or the Seller to enforce any of the terms of this Contract, the prevailing party in such action shall be entitled to such reasonable attorney fees as the court shall determine just and proper.

¶49 In Montana, attorney fees are allowed in civil cases when they are provided for by statute or contractual provision. *See Trustees of Indiana University v. Buxbaum*, 2003 MT 97, ¶ 19, 315 Mont. 210, ¶ 19, 69 P.3d 663, ¶ 19; *Jordan v. Elizabethan Manor* (1979), 181 Mont. 424, 434, 593 P.2d 1049, 1055. An award of attorney fees based in contract will be granted on appeal where the contract "obviously contemplated that attorney fees on appeal as well as at trial were to be charged," because the contract explicitly stated fees would be

14

awarded by "both trial and appellate courts." *Diehl and Associates v. Houtchens* (1979), 180 Mont. 48, 53, 588 P.2d 1014, 1015; *Transaction Network, Inc. v. Wellington Technologies, Inc.,* 2000 MT 223, ¶ 38, 301 Mont. 212, ¶ 38, 7 P.3d 409, ¶ 38; *Majers v. Shining Mountains* (1988), 230 Mont. 373, 381, 750 P.2d 449, 454; *Hoven v. Amrine* (1986), 224 Mont. 15, 17, 727 P.2d 533, 535.

¶50 This Court has also held that when an award of attorney fees is based in contract, the prevailing party may be entitled to an award of reasonable attorney fees on appeal, even if the contract does not explicitly say so. *See Quigley*, ¶ 47; *Smith v. Johnson* (1990), 245 Mont. 137, 145, 798 P.2d 106, 111 (citing *Lauderdale v. Grauman* (1986), 223 Mont. 357, 359, 725 P.2d 1199, 1200).

¶51 Nevertheless, this Court has further held the prevailing party "is entitled to attorney fees generated on appeal only if, in fact, the District Court awards [the prevailing party] attorney fees in the first place. . . ." *General Motors Acceptance Corp. v. Finch* (1990), 246 Mont 359, 363, 805 P.2d 1331, 1334.

¶52 Based on the facts of this case, and because J.G.L. failed to appeal the District Court's determination not to award attorney fees to any of the parties upon summary judgment, J.G.L. is not now entitled to an award of attorney fees. Hobbs is not entitled to attorney fees because it has not prevailed on appeal.

## IV. CONCLUSION

¶53 We affirm the judgment of the District Court.

/S/ JOHN WARNER

15

We Concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE