Filed 8/11/16  Zawtocki v. Black Angus Steakhouses CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| ALLAN ZAWTOCKI, as Co-Trustee etc. et al., Plaintiffs and Appellants, v. BLACK ANGUS STEAKHOUSES, LLC, Defendant and Respondent. | E062969 (Super.Ct.No. RIC1409802) OPINION |

APPEAL from the Superior Court of Riverside County.  John W. Vineyard, Judge.  Affirmed.

Niddrie Addams and John S. Addams; Thomas P. Sayer for Plaintiffs and Appellants.

Shoreline, Andrew S. Pauly, and Damon A. Thayer for Defendant and Respondent.

The lease in this case provided that, if and when the lessee exercised its option to extend the lease, the new minimum rent would be determined by so-called "final offer"

1

or "baseball" arbitration. Specifically, the lessor would make an offer; the lessee would be bound by the lessor's offer, unless it made its own offer within 30 days; and then the lessor would be bound by the lessee's offer, unless it demanded arbitration within 15 days. If the lessor did demand arbitration, the arbitrator would have to adopt either the lessor's offer or the lessee's offer — the arbitrator could not split the baby.

Here, the lessor[1] offered $220,000 a year. The lessee[2] offered $140,000 a year. Rather than demand arbitration, the lessor protested that the lessee had not calculated its offer in accordance with guidelines set forth in the lease; it waited to hear back from the lessee, but meanwhile, its time to demand arbitration expired.

The trial court denied the lessor's petition to compel arbitration, ruling that it had failed to make a timely demand. As the lessor notes, ordinarily, the denial of an arbitration petition allows the parties to carry on their dispute, albeit in a judicial forum; in this case, however, the denial of the petition effectively resolves the dispute. The arbitration petition is, so to speak, the whole ball game.

The lessor appeals, contending:

1. The lessee's notice was ineffective because it did not comply with the lease.

---

[1]    The current lessor is a trust — namely, Allan Zawtocki, William Rhett Tabor, and William W. Paty, as trustees under the will and estate of Mark Alexander Robinson and as trustees under a deed of trust dated July 30, 1953 and executed by Mark Alexander Robinson and Mary Kapuahaulani Hart Robinson. We will refer to these trustees collectively as the Trust.

[2]    The current lessee is Black Angus Steakhouses, LLC (Black Angus).

2

2. The lessor was entitled to relief from forfeiture under Civil Code section 3275.

3. The lessor's forfeiture was excused by waiver or estoppel.

4. The trial court erred by failing to consider waiver, estoppel, and relief from forfeiture.

We find no error. Hence, we will affirm.

I

FACTUAL BACKGROUND

The following facts are taken from the evidence introduced in support of and in opposition to the petition to compel arbitration.

A. *The Relevant Lease Provisions*.

In 1994, the Trust's predecessor in interest leased certain property in Temecula to Black Angus's predecessor in interest, for use as a restaurant. The initial lease term was 20 years. The lessee had the option to extend the lease for three successive five-year terms. During the first extended term, the minimum rent would be set as follows:

"Within thirty (30) days following Lessor's receipt of [Lessee's] Notice of Exercise, Lessor shall notify Lessee in writing of its opinion of Fair Market Rental . . . for the Extended Term ('Lessor's Rental Notice'). If Lessee disagrees with Lessor's opinion of the Fair Market Rental, it shall so notify Lessor ('Lessee's Value Notice') within thirty (30) days after receipt of Lessor's Rental Notice. Lessee shall be bound by the Fair Market Rental stated in Lessor's Rental Notice if Lessee does not deliver Lessee's Value Notice to Lessee [*sic*] within such thirty (30)-day period. If the parties are unable to

3

resolve their differences within ten (10) days after Lessor's receipt of Lessee's Value Notice, either party may apply for Arbitration . . . . If neither party applies for Arbitration within fifteen (15) days after receipt by Lessor of Lessee's Value Notice, Lessor shall be bound to the Fair Market Rental stated in Lessee's Value Notice."

Once arbitration was demanded, the arbitrator was required to select either the Lessor's Fair Market Rental or the Lessee's Fair Market Rental: "The arbitrator shall have no right to propose a middle ground or any modification of either of the proposed valuations."

During the second and third extended term, the minimum rent was fixed at 110% of the minimum rent for the preceding extended term. Thus, the procedure for determining the rent for the first extended term effectively also determined the rent for the second and third extended term.

The lease defined "Fair Market Rental" as "the Minimum Monthly Rent chargeable for the Original Leased Premises, based on the following factors applicable to the Original Leased Premises or any premises comparable to the Original Leased Premises:

"[]1  Rental rates being charged for premises comparable to the Original Leased Premises in the same geographical location and the relative locations of such comparable premises.

"[]2  Improvements . . . .

"[]3  Free rent periods or other rental concessions [and r]ental adjustments, if any.

4

"[]4  Services and utilities provided or to be provided.

"[]5  Use limitations or restrictions.

"[]6  Lessor's obligation to pay brokerage commissions.

"[]7  The period of vacancy prior to complete execution of a new lease for the Leased Premises.

"[]8  Any other relevant Lease terms or conditions."

B. *The Parties' Respective Notices*.

On June 17, 2014,[3] Black Angus exercised its option to renew for the first extended term.

The Trust obtained a professional appraisal, which concluded that the fair market rent was $208,833 per year.  On August 1, 2014,[4] the Trust gave Black Angus notice that its opinion of fair market rent was $220,000 per year (the Trust's notice).

---

[3]  Any date stated in this section is the date the letter or email in question was sent.

The lease provided that notices given by personal delivery were effective on the same day; notices given by "reputable courier service" were effective on the following business day; and notices given by mail were effective three days later.  However, any time lapse between the date a notice was sent and the date it became effective is not material in this case.  When the parties responded to notices, their responses were timely, even if we assume the shortest possible time; and when they failed to respond to notices, their responses were untimely, even if we assume the longest possible time.

[4]  This was more than 30 days after Black Angus exercised its option, and therefore late under the terms of the lease.  However, Black Angus waived timely compliance with the 30-day requirement by responding with its own notice.  (See part VI.B.1, *post*.)  In any event, Black Angus does not claim that the Trust's notice was ineffective.

5

On August 8, 2014, Black Angus gave the Trust notice that its opinion of fair market rent was $140,000 per year (Black Angus's notice). Black Angus's notice stated: " . . . Black Angus disputes the 'Fair Market Value' of $220,000/annum as there was no back-up attached supporting your increase. The minimum rent has increased by an average of 9% during each five-year period under the Lease. The current rent is $125,970.96. A 10% increase over that would bring the annual rent to $138,568.05."

On August 12, 2014, the Trust sent Black Angus a letter stating: "We acknowledge receipt of your letter . . . offering a new minimum annual rent of $140,000. . . . The . . . minimum annual rent is not based on a percentage rent increase. We reinstate our proposal for a minimum annual Fair Market Rent of $220,000 . . . , as supported by our . . . appraisal report."

On August 25, 2014, the Trust emailed Black Angus, asking it to confirm receipt of the Trust's August 12 letter "reinstat[ing]" its offer.

On August 27, 2014, counsel for Black Angus sent the Trust a letter stating: "Since the Lessor did not apply for arbitration by August 23, 2014, the Lessee's Value Notice prevails."

On August 29, 2014, counsel for the Trust sent a demand for arbitration to counsel for Black Angus.[5]

---

[5] Black Angus complains that the demand for arbitration was sent "to one of Black Angus's outside attorneys despite the lease's requirement that such notices be sent to Black Angus." However, it never actually argues that we should uphold the trial court's ruling on this ground. In any event, sending the demand to Black Angus's counsel would appear to be at least substantial compliance. (See generally *Cline v.*

*[footnote continued on next page]*

## II

## PROCEDURAL BACKGROUND

The Trust filed a petition to compel arbitration. In support of the petition, it argued that: (1) Black Angus's notice was ineffective because its $140,000 figure was not based on the eight factors specified in the lease; and (2) the Trust should be relieved of any forfeiture.

In opposition to the petition, Black Angus argued that: (1) *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, which held that the failure to make a timely demand for arbitration results in forfeiture of the right to compel arbitration, was on point and controlling; (2) Black Angus's notice complied with the lease; and (3) the Trust was not entitled to relief from forfeiture.

The trial court denied the petition. It ruled: "[T]he 15-day deadline to demand arbitration [is] a condition precedent and I think the Platt case is controlling. . . . [¶] Failure to demand arbitration within that deadline period is a forfeiture or leads t[o] a forfeiture."

---

*[footnote continued from previous page]*
*Yamaga* (1979) 97 Cal.App.3d 239, 247-248; *Pacific Allied v. Century Steel Products, Inc.* (1958) 162 Cal.App.2d 70, 76-77.)

7

## III

## STANDARD OF REVIEW

"Ordinarily, we review a denial of a petition to compel arbitration for abuse of discretion.  [Citation.]  However, where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo.  [Citation.]"  (*California Parking Services, Inc. v. Soboba Band of Luiseno Indians* (2011) 197 Cal.App.4th 814, 817 [Fourth Dist., Div. Two].)

Black Angus asserts that waiver, estoppel, and forfeiture are all questions of fact, which we must review under the substantial evidence standard.  However, "[w]hen the facts are not disputed, the effect or legal significance of those facts is a question of law, and the appellate court is free to draw its own conclusions, independent of the ruling by the trial court.  [Citation.]"  (*Aghaian v. Minassian* (2015) 234 Cal.App.4th 427, 434.)  For example, "[g]enerally, the determination of either waiver or estoppel is a question of fact, and the trier of fact's finding is binding on the appellate court.  [Citations.]  When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling. [Citations.]"  (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319.)  Here, the underlying facts are undisputed; all of the parties' various disputes are over the legal effect of those facts.  Thus, our review is de novo.

IV

THE VALIDITY OF BLACK ANGUS'S NOTICE

The Trust contends that Black Angus's notice was ineffective because it did not comply with the lease. As mentioned, the lease defined "Fair Market Rental" as the rent "chargeable" for the premises, "based on" eight specified factors. Black Angus's notice stated that it had calculated its $140,000 figure simply by increasing the existing rent by 10 percent. The Trust concludes that, because the notice was not based on the eight specified factors, it was not a "Lessee's Value Notice" within the meaning of the lease, and therefore it did not start the 15-day time to demand arbitration running.

The Trust claims that "'Value Notice' is not defined in the [lease]." That is incorrect. Actually, the lease provides, "If Lessee disagrees with Lessor's opinion of the Fair Market Rental, it shall so notify Lessor ('Lessee's Value Notice') within thirty (30) days after receipt of Lessor's Rental Notice." Thus, it defines "Lessee's Value Notice" as a notice that the Lessee disagrees with the Lessor's opinion. Black Angus's notice met this definition.

The lease required each party to state its "opinion" regarding Fair Market Rental. An opinion is inherently subjective. While the lease did define Fair Market Rental in terms of eight factors, it did not expressly require the parties to consider those factors in forming their opinions. Also, it did not require a party's notice to explain how that party had calculated its figures. Indeed, the Trust's own notice did not explain how it had

calculated its $220,000 figure; it did not mention the appraisal.**6** We conclude that the parties did not intend to require that the notices be based on the eight factors, because they left any such requirement unenforceable.

The Trust suggests that it is not fair (or at least not the intent of the lease) for a lessor to be bound by the lessee's figure unless the lessee is required to "give a true Value Notice based on the listed market factors . . . ." However, this overlooks the way baseball arbitration works. If the lessee states an unrealistic figure, the lessor's remedy is to demand arbitration. Indeed, in that situation, the lessor should be delighted, because in the ensuing arbitration, the lessee will be unable to support its figure with evidence and the arbitrator will most likely accept the lessor's own figure.

In a related argument, the Trust claims that Black Angus could not enforce the lease because it failed to comply with a condition precedent by not basing its figure on the eight factors. We reject this argument based on our holding, above, that the lease did not require the parties to base their figures on the eight factors.

---

**6** The Trust points out that, in other communications with Black Angus, it disclosed that its figure was based on an appraisal. This is beside the point. What is key is that the notice itself did not mention the appraisal. "[C]ontemporaneous construction of a contract by the parties provides persuasive evidence of what the parties intended when they made their bargain. [Citations.]" (*Zalk v. General Exploration Co.* (1980) 105 Cal.App.3d 786, 794.) Here, it confirms our conclusion that the lease did not require the parties' notices to explain their respective calculations.

10

V

## RELIEF FROM FORFEITURE UNDER CIVIL CODE SECTION 3275

The Trust contends that it was entitled to relief from forfeiture under Civil Code section 3275.

"[E]quity abhors a forfeiture. [Citations.]" (*Peak-Las Positas Partners v. Bollag* (2009) 172 Cal.App.4th 101, 106.) Thus, Civil Code section 3275 provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

We review a trial court's grant or denial of relief under Civil Code section 3275 for abuse of discretion. (*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1065-1066.)

Black Angus argues that Civil Code section 3275 does not apply here, citing *Platt Pacific, Inc. v. Andelson*, *supra*, 6 Cal.4th 307. In *Platt Pacific*, the plaintiffs and defendants agreed to participate in a voluntary settlement conference and, if that failed to resolve their disputes, to submit to arbitration. Their agreement provided that any demand for arbitration had to be made by August 31, 1989. (*Id*. at p. 311.) Because the defendants' counsel requested a delay of the settlement conference, and also because the principal of a plaintiff corporation died, the plaintiffs did not make a demand for arbitration until October 30, 1989. (*Id*. at p. 312.)

11

The Supreme Court framed the issue before it thus: "May a party that did not demand arbitration within the time specified in an agreement to arbitrate nevertheless compel arbitration on the ground that it did not intend to relinquish the right to arbitrate the dispute when it failed to make a timely demand?" (*Platt Pacific, Inc. v. Andelson*, *supra*, 6 Cal.4th at p. 310.) The plaintiffs argued "that a determination of waiver requires an evaluation of (1) the state of mind of the party alleged to have waived arbitration, and (2) the extent of prejudice to the other contracting party." (*Id*. at p. 313.)

The Supreme Court held that "the failure to timely demand arbitration is a 'waiver' of the right to arbitrate. . . . [T]he term 'waiver,' as used in the context of the failure to timely demand arbitration, refers not to a voluntary relinquishment of a known right, but to the loss of a right based on a failure to perform an obligation." (*Platt Pacific, Inc., v. Andelson*, *supra*, 6 Cal.4th at p. 314.)

"When, as here, the parties have agreed that a demand for arbitration must be made within a certain time, that demand is a condition precedent that must be performed before the contractual duty to submit the dispute to arbitration arises. The nonoccurrence of a condition precedent may be excused for a number of legally recognized reasons. But when a party has failed to fulfill a condition that was within its power to perform, it is not an excuse that the party did not thereby intend to surrender any rights under the agreement. [Citation.] A contrary conclusion would undermine the law of contracts by vesting in one contracting party the power to unilaterally convert the other contracting party's conditional obligation into an independent, unconditional obligation

12

notwithstanding the terms of the agreement." (*Platt Pacific, Inc. v. Andelson*, *supra*, 6 Cal.4th at pp. 313-314.)

*Platt Pacific* is all very well as far as it goes. However, it did not involve any issue of relief from forfeiture under Civil Code section 3275. To circumvent this problem, Black Angus asserts that "[i]n deciding *Platt*, the Supreme Court was well aware of . . . [s]ection 3275." But even the Supreme Court is not omniscient. Hence, the law is to the contrary: "''''[I]t is axiomatic that cases are not authority for propositions not considered.''''' [Citations.]" (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 641; see, e.g., *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900, fn. 7 [prior case holding that employee could sue public entity for disability discrimination was not authority as to whether public entity had statutory immunity].)

In a one-sentence argument, Black Angus also asserts that the Trust is not entitled to relief from forfeiture because the lease provided that "[t]ime is of the essence . . . ." In support of this argument, it cites *Johnson v. Alexander* (1976) 63 Cal.App.3d 806; but again, that case did not involve any issue of relief from forfeiture under Civil Code section 3275. It also cites *Bisno v. Sax* (1959) 175 Cal.App.2d 714, but there, the court noted that time was *not* of the essence (*id*. at pp. 721-722); accordingly, it does not stand for the proposition that relief under Civil Code section 3275 is barred when time *is* of the essence. Actually, controlling Supreme Court cases hold that relief under Civil Code section 3275 can be granted even when time is of the essence. (*Holiday Inns of America,*

*Inc. v. Knight* (1969) 70 Cal.2d 327, 330-331; *Barkis v. Scott* (1949) 34 Cal.2d 116, 118-119.)

While we do not accept Black Angus's arguments, however, it does not follow that the Trust must prevail. Even when the respondent wholly fails to file a brief, the appellant is not automatically entitled to a reversal. (*Petrosyan v. Prince Corp.* (2013) 223 Cal.App.4th 587, 593, fn. 2.) Rather, "the appellant[] still bears the affirmative burden to show error. [Citation.]" (*In re Marriage of Rifkin and Carty* (2015) 234 Cal.App.4th 1339, 1342.) Accordingly, we examine the Trust's contention independently.

Early cases applying Civil Code section 3275 mostly involved land sale contracts. (See *Holiday Inns of America, Inc. v. Knight*, *supra*, 70 Cal.2d at p. 330.) For example, in *Barkis v. Scott*, *supra*, 34 Cal.2d 116, the purchasers made a down payment and 57 monthly payments; they also made improvements to the property. However, their checks for the 58th and 60th monthly payments bounced. The seller notified them that they were in default and that he was declaring a forfeiture. (*Id*. at p. 117.) Until they received the notice of forfeiture, the defendants were not aware that the checks had bounced. (*Id*. at pp. 117-118.) They immediately tendered payment of the amounts due, by certified check, but the plaintiff refused to accept it. (*Id*. at p. 118.)

The Supreme Court held, "it is clear that defendants are entitled to relief under section 3275 . . . ." (*Barkis v. Scott*, *supra*, 34 Cal.2d at p. 118.) "[W]hen the default has not been serious and the vendee is willing and able to continue with his performance of

the contract, the vendor suffers no damage by allowing the vendee to do so. In this situation, if there has been substantial part performance or if the vendee has made substantial improvements in reliance on his contract, permitting the vendor to terminate the vendee's rights under the contract and keep the installments that have been paid can result only in the harshest sort of forfeitures." (*Id*. at p. 122.)

By contrast, a trial court cannot grant relief under Civil Code section 3275 from the failure to timely exercise an option. "[T]he time within which an option must be exercised . . . cannot be extended beyond that provided in the contract. To hold otherwise would give the optionee, not the option he bargained for, but a longer and therefore more extensive option." (*Holiday Inns of America, Inc. v. Knight*, *supra*, 70 Cal.2d at p. 330.)

For example, in *Simons v. Young* (1979) 93 Cal.App.3d 170 [Fourth Dist., Div. Two], the plaintiff and defendants were parties to a lease that included options to renew. Each option had to be exercised at least three months before the lease terminated. (*Id*. at p. 174.) The lessee did not exercise an option to renew on time. (*Id*. at p. 176.) After the lessors notified him that the lease was about to terminate, however, he purported to exercise the option, approximately a month late. (*Id*. at pp. 176-177.) The trial court granted relief from forfeiture, finding "that [the] lessee would suffer extreme hardship if his right to renew the lease were forfeited," and "that [the] lessors did not suffer any damage . . . ." (*Id*. at pp. 177-178.)

This court reversed. We held that Civil Code section 3275 was "inapplicable." (*Simons v. Young*, *supra*, 93 Cal.App.3d at p. 182.) We explained, in part: "'A full

15

appreciation of the nature of an option precludes the idea that courts may allow the optionee time beyond that limited in the writing in which to accept the offer of the other party. With the lapse of time the right to exercise the option automatically expires. . . . It is not a case of cancellation of a right, for the right only existed up to a certain time and then ceased by the mere passing of that time.' [Citation.]" (*Id*. at p. 183.) "'". . . When that time (the time in which the option is to be exercised) expires, the option holder has received the full agreed equivalent of the price he paid for his option; and a refusal to give effect to an acceptance that is one minute late results in no forfeiture."' [Citation.]" (*Id*. at p. 182.)

Here, the Trust's right to demand arbitration is more like an option to renew a lease than it is like a land sale contract. In a land sale contract, if the purchaser misses even one monthly payment, the seller can terminate the contract, keep the land, and keep all of the previous payments. This is the forfeiture that triggers the application of Civil Code section 3275. The Trust is not facing any such forfeiture here. The lease is still in effect and Black Angus still has to pay rent, albeit at its own chosen rate. While this is less than market rate, it is still ten percent more than Black Angus had been paying before. It must be remembered that, even if the Trust were to succeed in compelling arbitration, the arbitrator could still choose to award rent of $140,000 a year, rather than $220,000 a year.

The Trust's right to demand arbitration was more like an option to renew a lease, in that it existed only up until a certain time and then ceased by the passing of that time. Once it expired, the Trust had received everything it bargained for.

The Trust cites *Platt Pacific* for the proposition that the failure to make a timely demand for arbitration results in a "forfeiture" and can therefore be the subject of relief under Civil Code section 3275. We repeat, however, that *Platt Pacific* did not involve any issue of relief from forfeiture under Civil Code section 3275. It simply held that the failure to make a timely demand for arbitration is not a "waiver," which requires intentional relinquishment of a known right, but rather a "forfeiture," which does not. (*Platt Pacific, Inc. v. Andelson*, *supra*, 6 Cal.4th at pp. 314-316.) This sheds no light on whether the resulting loss of the right to arbitrate constitutes a "forfeiture" within the meaning of Civil Code section 3275.

We therefore conclude that the trial court did not abuse its discretion by denying relief from forfeiture.

VI

WAIVER AND ESTOPPEL

The Trust contends that any forfeiture was excused by waiver or estoppel.

A.     *Preservation of the Issue for Appeal.*

Preliminarily, Black Angus claims the Trust forfeited this contention by failing to raise it in its petition for arbitration. However, the Trust did raise waiver and estoppel in its reply brief. Black Angus did not object that this was too late; to the contrary, at the

17

hearing on the motion, its counsel argued against waiver and estoppel on the merits. Thus, the contention has been preserved.

      B.    *The Merits*.

      1.    *Waiver.*

"A condition may be waived; i.e., the party whose duty is dependent upon the other party's performance of a condition may make his or her duty independent, binding the party to perform unconditionally. [Citation.]" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 823, p. 912, italics omitted.) "Like any other contractual terms, timeliness provisions are subject to waiver by the party for whose benefit they are made. [Citation.]" (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1339, fn. omitted.)

"'"In general, to constitute a waiver, there must be an existing right, a knowledge of its existence, an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."'" [Citation.]" (*DuBeck v. California Physicians' Service* (2015) 234 Cal.App.4th 1254, 1265.) Unlike estoppel, however, waiver does not require reliance. (*Ibid.*)

Here, the Trust relies on the fact that it sent its own notice late, on August 1, but Black Angus did not object. We accept that this was a waiver of that particular deadline. (See fn. 4, *ante,* p. 5.) The lease, however, provided: "The waiver by Lessor of any breach of any Lease provision shall not be deemed a waiver of . . . any subsequent breach of the same or any other term, covenant or condition therein contained." Accordingly,

this was not a waiver of the Trust's subsequent failure to make a timely arbitration demand.

The Trust also points out that Black Angus "ignored" its August 12 letter, purporting to reinstate its $220,000 figure, and its August 25 email, asking Black Angus to confirm receipt of its August 12 letter. However, this was mere silence; it was not inconsistent with the position that the clock to demand arbitration was ticking. It would not lead a reasonable person to believe that Black Angus was not going to enforce the deadline. Thus, it does not rise to the level of a waiver.

      2.    *Estoppel.*

"'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279.)

There is no evidence that Black Angus actually intended the Trust to fail to make a timely demand for arbitration. Moreover, the Trust did not have a right to believe that Black Angus so intended. Although Black Angus forgave the Trust's failure to send its

19

notice on time, it would not have been reasonable to conclude that Black Angus would continue to forgive future deadlines. This is particularly true because the lease was not clear about what would happen if the lessor failed to send its initial notice on time — would the lessee still have the right to send its own notice, or would the rent simply remain the same? However, the lease was very specific about what would happen if the lessor failed to make a timely demand for arbitration.

For the reasons already discussed, Black Angus's mere silence in response to the August 12 letter and August 25 email could not reasonably be viewed as a representation that Black Angus would not enforce the deadline to demand arbitration. We also note that on August 23, when the Trust failed to make a timely demand for arbitration, it could hardly have been relying on Black Angus's failure to respond to its August 25 email.

In sum, then, the Trust did not make a sufficient showing of either waiver or estoppel.

VII

THE TRIAL COURT'S FAILURE TO CONSIDER

WAIVER, ESTOPPEL, AND RELIEF FROM FORFEITURE

The trial court ruled that *Platt Pacific* was "controlling"; it did not mention waiver, estoppel, or relief from forfeiture. The Trust therefore argues that, even if we do not reverse on the merits, we should remand with directions to consider and to rule on these issues.

20

The Trust, however, did not request a statement of decision. (See Code Civ. Proc., § 632; see also *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 688-689 [statement of decision may be requested in connection with petition to compel arbitration].) "A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence. [Citations.]" (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.)

The Trust cites *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54. There, however, the trial court refused, expressly and on the record, to consider the plaintiffs' estoppel claim. (*Id.* at p. 61.) Thus, the presumption that it had considered and rejected this issue was rebutted. But that is not what happened here.

The Trust also argues that the trial court's comments on the record affirmatively demonstrate that it did not consider waiver, estoppel, or relief from forfeiture. If it had expressly stated that it was refusing to consider these issues, we might agree. Instead, it simply failed to mention them.

"[W]here the trial court was not required to prepare a statement of decision or explain its reasons . . . , it is especially important to refrain from using the court's oral comments as a basis for reversal. In that situation, reviewing the trial court's oral

21

comments would in effect require the trial court either to prepare a statement of decision where none is required or to say nothing during argument to avoid creating grounds for impeaching the final order.  We decline to place the trial courts in such an untenable position." (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451.)

We therefore presume that the trial court considered waiver, estoppel, and relief from forfeiture, rejected them, and made all findings necessary to support its rejection.

VIII

DISPOSITION

The order appealed from is affirmed.  Black Angus is awarded costs on appeal against the Trust.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

HOLLENHORST

J.

MILLER

J.